# 𝔑𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## ELVIRA V. PAYNE v. TOBACCO TRADING CORPORATION AND OTHERS.

January 19, 1942.

Record No. 2433.

Present, All the Justices.

The opinion states the case.

*McGuire, Riely, Eggleston & Bocock* and *William H. King*, for the appellant.

*Joseph M. Hurt*, for the appellees.

Eggleston, J., delivered the opinion of the court.

This is an interpleader proceeding filed in the court below by Tobacco Trading Corporation against Elvira V. Payne and against Robert Dunlop and J. W. Dunnington, executors of the last will and testament of Cameron Dunlop, deceased, to determine the ownership of 100 shares of the preferred stock and 100 shares of the common stock of Tobacco Trading Corporation, which Elvira V. Payne claimed Dunlop had given her shortly before his death. From a decree upholding the claim of the executors that the gift had not been completed before Dunlop's death, and

that, therefore, the stock was the property of his estate, Elvira V. Payne has appealed.

The essential facts are not in dispute. Cameron Dunlop, a well-to-do bachelor, resided at Drakes Branch, Charlotte county, Virginia, where for many years he had been engaged as a leaf tobacco dealer. J. W. Dunnington lives at Farmville, in Prince Edward county, about thirty miles from Drakes Branch, and has been a leaf tobacco dealer since 1911. He and Dunlop had been friends of long standing and had had many business dealings. They had bought tobacco on joint account, a relationship which imported the highest mutual trust and confidence. For several months preceding Dunlop's death Dunnington carried on his friend's business. It fell to Dunnington to tell Dunlop of the fatal nature of the latter's disease and the fact that his days were drawing to a close. Dunnington wrote Dunlop's will shortly before the latter died.

Mrs. Elvira V. Payne lives at Drakes Branch with her husband, J. L. Payne, who has been in the tobacco business there for many years. The Paynes were devoted friends of Dunlop, who was a frequent and welcome visitor in their home. It appears that Dunlop and Payne had bought tobacco on joint account and each had the highest esteem and affection for the other.

About January 1, 1938, due to cancer of the lungs, Dunlop's health became seriously impaired and so continued until his death which occurred August 25 following. After having undergone treatment in a Farmville hospital during the previous months, Dunlop returned to Drakes Branch in June, 1938. He had previously lived at a small hotel adjacent to the Southern Railway tracks but upon his return from the hospital he was unable to go up and down the stairs, and, therefore, he could not resume his residence at the hotel. The Paynes invited him to come to their home. Dunlop accepted the invitation and Mrs. Payne fitted up a room for him on the first floor of her house. From the time Dunlop came into the Payne home in June, until his death in August,

he was constantly nursed and cared for by Mrs. Payne with the assistance of Mrs. Tucker, a mutual friend of Dunlop and the Paynes.

While Dunlop paid the Paynes a small amount for board, he fully realized that he was further and greatly indebted to them for their hospitality and kindness. Accordingly, on the day on which his will was written (August 14) he gave Mrs. Payne the sum of $10,000 in cash. In addition to this he often spoke to Mrs. Payne of his intention to make her a gift of some of his stock in the Tobacco Trading Corporation, a Richmond concern of which he was an officer and the largest stockholder. He likewise told Dunnington of his intention to give this stock to Mrs. Payne.

On August 17, 1938, a representative of a Baltimore bank delivered to Dunlop, at the Payne residence, 1170 shares of the preferred stock and 1170 shares of the common stock of the Tobacco Trading Corporation, which Dunlop had pledged with the bank as security for an indebtedness to it. This indebtedness had been paid off and the stock released through the assistance of Dunnington.

The certificates of this stock were in Dunlop's name and were endorsed in blank by him. Mrs. Payne placed the stock in a bureau drawer under some of Dunlop's clothes, but realizing its value and knowing it was endorsed in blank, she was uneasy for its safety. She insisted that it be delivered to Dunnington for safekeeping. In the meantime Dunlop had agreed to sell 100 shares of each class of this stock to Dunnington, and 50 shares of each class to one Hubbard. On August 18 Dunnington called at the Payne residence and received the stock which had been purchased by him and Hubbard. Some time between that date and August 23, the remaining shares of stock were taken by Dunnington to Farmville and placed in his safe for protection.

On the morning of August 23 Dunnington came to see Dunlop about some of the latter's affairs. Nothing was said at that time about the gift of any stock to Mrs. Payne. That afternoon, after Dunnington had left, Dunlop requested

Mrs. Payne to telephone Dunnington to return that night, if convenient, saying to her, "I want to get it straight about the stock I have given you." As requested, Mrs. Payne telephoned Dunnington but did not then disclose to him the occasion for his return.

Pursuant to this message Dunnington came to the Payne residence that night and after Mrs. Payne had left the room Dunlop told him that "he was going to give Elvira some stock in the Tobacco Trading Corporation," and that he wanted him (Dunnington) "to settle the matter." He then asked Dunnington to call Mrs. Payne into the room. In Dunnington's words, "She came in and he told her that he was giving her 100 shares of common and 100 shares of preferred stock in the Tobacco Trading Corporation." Dunnington further testified that Dunlop then directed him to send the necessary shares which he (Dunnington) had in his possession to the home office of the Tobacco Trading Corporation at Richmond, "and have them transferred on or after August 29 to Elvira V. Payne." While Dunlop did not state what particular certificates were to be forwarded, he was specific in his direction that 100 shares of preferred and 100 shares of common stock were to be transferred to the name of Mrs. Payne. Dunlop also explained that he wanted the transfer of the stock postponed until August 29 in order that he might receive the dividend which would be paid on that date. Dunnington replied that since he had given Dunlop "an official receipt for the entire block of stock" he desired "written instructions" in order to have this transfer made, and suggested that he would prepare the necessary documents the next day and present them for Dunlop's signature. Dunlop, however, was insistent that the transaction be closed immediately and that the necessary "instructions" be prepared then and there by Dunnington. Dunnington agreed to this, Mrs. Payne procured the necessary writing material, and Dunnington wrote out the following letters which were later signed by Dunlop and delivered to Dunnington:

"Drakes Branch, Va.
"Aug. 23, 1938.

"Mr. J. W. Dunnington,
"Farmville, Va.

"Dear Sir:

"Please deliver to the Tobacco Trading Corporation, Richmond, Va.

100 shares preferred stock

100 shares common stock

of the Tobacco Trading Corporation which you are holding for me.

"This shall be a receipt for the stock.

"Yours very truly,

"Cameron Dunlop"

"Drakes Branch, Va.
"Aug. 23, 1938.

"Tobacco Trading Corp.
"Richmond, Va.

"Gentlemen:

"Mr. J. W. Dunnington has been requested to deliver to you

100 shares of preferred stock

100 shares of common stock

of your company.  Please transfer this stock to Elvira V. Payne, making the transfer as of August 29th not before.

"Yours very truly,

"Cameron Dunlop"

Mrs. Payne testified positively that after the letters were signed Dunlop handed them to her, saying, "This is yours, and I hope you will have a nice income from it"; that she in turn delivered the two letters to Dunnington and asked him to look after the matter for her since she could not leave home on account of Dunlop's condition.

While Dunnington was not positive, he stated that his recollection was that the letters were either delivered directly to him by Dunlop or were handed by Dunlop to Mrs. Payne who immediately gave them to him. While he did not deny that Mrs. Payne had requested him to look after the transaction for her, he said, "It may have been, but I do not recall that part of it."

After having received the documents signed by Dunlop, Dunnington returned home. The next day, August 24, Dunnington wrote the Tobacco Trading Corporation enclosing the letter signed by Dunlop and directed to the corporation. He also enclosed a certificate for 100 shares of preferred stock standing in Dunlop's name, with directions that it be transferred to Mrs. Payne, and another certificate for 105 shares of common stock, with directions that 100 shares be transferred to the name of Mrs. Payne and 5 shares transferred to Dunlop's name. This letter was received by the Tobacco Trading Corporation on August 26, after Dunlop's death which occurred on the day previous.

Being uncertain as to what disposition to make of the matter, the Tobacco Trading Corporation instituted the present interpleader proceedings which resulted in the decree here under review.

Counsel for the respective parties agree that the determination of the matter before us depends upon the application of these fundamental principles of law:

[■ (1) In order for there to be a gift of personal property there must be an intention to make a present gift accompanied by a delivery of the thing given or the means of obtaining it. Or, stated conversely, a gift cannot be made to take effect in possession in the future. Such a transaction amounts only

to a promise to make a gift, and being without consideration is invalid.

Gifts of Personalty (Graves), 1 Va. Law Reg. 871, 872; *Spooner's Adm'r* v. *Hilbish's Ex'r*, 92 Va. 333, 341, 23 S. E. 751; *Shankle* v. *Spahr*, 121 Va. 598, 607, 93 S. E. 605; *Snidow* v. *First Nat. Bank of Narrows*, 178 Va. 239, 245, 16 S. E. (2d) 385, 387.

█ A transfer of possession from the donor to the donee's agent, or to a trustee for the donee, is a sufficient delivery to effect a gift. *Spooner's Adm'r* v. *Hilbish's Ex'r, supra* (92 Va., at page 341); *Johnson* v. *Colley*, 101 Va. 414, 420, 44 S. E. 721, 99 Am. St. Rep. 884.

█ A pre-existing possession in the donee or his agent dispenses with the necessity of a new act of delivery. *Thomas* v. *First Nat. Bank of Danville*, 166 Va. 497, 506, 186 S. E. 77, 81; Gifts of Personalty (Graves), 1 Va. Law Reg. 871, 873.

The contention of the appellant, Mrs. Payne, is that it was the intent of Dunlop, the donor, to make a gift *in praesenti* of the stock to her on the night of August 23, the donor reserving to himself merely the right to collect the dividend thereon, payable on August 29; and that the present intention to give the stock was accompanied by a sufficient delivery to complete the gift. She further contends that the sufficiency of the delivery should be sustained on one or both of the following theories:

(1) That where possession of a thing is already vested in an intended donee or his agent, no new act of delivery by the donor is necessary in order to effect a gift *inter vivos;* that when Dunlop, the donor, on the night of August 23, expressed his present intention of giving the stock to Mrs. Payne, and Dunnington, pursuant to Dunlop's request and direction, agreed to take the necessary steps to have the stocks transferred to her, Dunnington became her agent or trustee, and that thus the gift was completed.

(2) That according to the testimony of Mrs. Payne, which, she says, is clear, positive and uncontradicted, after Dunlop had signed the letters he gave them to her, thereby

vesting her with the means of acquiring possession and use of the stock and completing the gift to her, and that she in turn delivered the letters to Dunnington as her agent for the purpose of effecting a transfer of the stock to her name.

The position of the appellee executors, on the other hand, is that the gift was not intended to take effect until August 29, 1938, and that since Dunlop, the donor, died before that time, the gift was not consummated. They further contend that even if Dunlop intended to make a present gift of the stock to Mrs. Payne, there is no proof of the necessary delivery of the stock, because as they say, under appellant's first theory, Dunnington was the agent of Dunlop, the donor, and not the agent or trustee for Mrs. Payne, the donee; and that under the appellant's second theory Mrs. Payne's testimony that Dunlop delivered the letters to her and that she in turn delivered them to Dunnington cannot be accepted because it is not corroborated as is required by Code, sec. 6209.

We cannot agree with the contention of the executors that the gift was not intended to take effect until August 29, 1938. On the contrary, we think it is clear that Dunlop intended to make a present gift of the stock, as distinguished from the dividend thereon, to Mrs. Payne on August 23.

Dunlop knew that he was suffering from an incurable disease and that his days were drawing to an end. He sent for Dunnington for the express purpose of completing the gift of this stock to Mrs. Payne. Although Dunnington had left only a short while before, Dunlop requested Mrs. Payne to ask him to return that night, telling her that he wanted "to get it straight about the stock I have given you."

According to Dunnington's testimony he knew that Dunlop had asked him to return for the purpose of completing the gift. Dunlop told him that "he wanted to settle the matter." In Dunnington's own words we have it that when Mrs. Payne was called into the room Dunlop "told her that he was giving her" the stock. This shows an intent to make a present gift and corroborates Mrs. Payne's testimony that Dunlop said to her, "This is yours, and I hope you will have a nice income from it."

Moreover, had Dunlop desired to postpone the gift until after the dividend date it is reasonable to assume that he would have done so. But, as we have seen, he was unwilling to defer the writing of the documents which Dunnington deemed necessary even until the next day. He insisted that the transaction be completed then and there.

After the letters had been written, signed by Dunlop, and delivered to Dunnington, all of the parties considered the transaction completed. Dunnington testified that he thought Dunlop had "settled the matter," and that he (Dunlop) told Mrs. Payne that he had done all he could "to complete the transaction." Mrs. Payne testified that Dunlop thought the gift was completed "because he said so."

The fact that Dunlop desired to retain the right to collect the dividend, payable on August 29, was not inconsistent with his intent to make a gift *in praesenti* to her on August 23. It is well settled that the retention of dividends by the donor is not inconsistent with a perfected gift. *Fall River Nat. Bank* v. *Estes,* 279 Mass. 380, 181 N. E. 242, 243; *Calkins* v. *Equitable Building & Loan Ass'n,* 126 Cal. 531, 59 P. 30, 31; *In re Chapple's Estate,* 332 Pa. 168, 2 A. (2d) 719, 721, 121 A. L. R. 422; *Delta & Pine Land Co.* v. *Benton,* 171 Ill. App. 635, 641; *Grant Trust & Savings Co.* v. *Tucker,* 49 Ind. App. 345, 96 N. E. 487, 489.

Having reached the conclusion that Dunlop, the donor, intended to make a gift *in praesenti* of the stock to Mrs. Payne on the night of August 23, we come to the next inquiry, Was there a delivery of the stock to the donee or to her agent?

In our opinion there was, for regardless of whether the letters were delivered by Dunlop to Mrs. Payne and by her handed to Dunnington, as she says, or whether they were delivered by Dunlop direct to Dunnington, as the executors contend, Dunlop divested himself of all dominion or control over the stock, as distinguished from the dividend thereon, and Dunnington became the agent of or trustee for Mrs. Payne in transmitting the letters and the stock to the Tobacco Trading Corporation for the purpose of having the stock transferred to her name.

It is true that until the completion of the transaction, on the night of August 23, Dunnington held the stock as custodian for Dunlop. But when Dunlop clearly expressed the present intent to give the stock to Mrs. Payne, and when the three parties to the transaction thought the matter was completed, Dunnington thereafter had no act to perform for the benefit of Dunlop. All that was thereafter done by Dunnington was purely and solely for the benefit of Mrs. Payne. Since Dunnington had custody of the stock, Dunlop could not make delivery of it to Mrs. Payne. He followed the only practicable course and directed and authorized the custodian, Dunnington, to have it transferred to Mrs. Payne. All of this was for the benefit of Mrs. Payne, the donee, and not for the benefit of Dunlop, the donor. This trust Dunnington accepted and agreed to perform.

In order to constitute Dunnington the trustee for Mrs. Payne, it was not necessary that the request come from her, the donee, as distinguished from Dunlop, the donor. Indeed, in transactions of this character it is usually the donor who constitutes the third person the agent or trustee for the donee.

*Johnson* v. *Colley, supra,* involved the question as to whether a third party was the agent of the donor or the agent of the donee, an infant. This court said (101 Va., p. 420): "Delivery may be made to a third person under such circumstances as to create an agency merely; as where the donor retains dominion or control over the thing given. If, however, the delivery is made to a third person for the use of the donee, or under such circumstances as indicate that the donor relinquishes all right to or control of the thing given, and intends to vest a present title in the donee, the gift will be sustained."

Likewise, in *Russell's Ex'rs* v. *Passmore,* 127 Va. 475, 103 S. E. 652, it was held that Russell, to whom delivery was made, received the property as trustee for the intended donee at the request of the donor.

Whether the third person is the agent of the donor or the agent or trustee for the donee turns on the intent of

the donor, to be gathered from the facts and circumstances of a particular case. *Bickford* v. *Mattocks,* 95 Me. 547, 50 A. 894, 895; *In re Fenton's Estate,* 182 Iowa 346, 165 N. W. 463, 465.

In the case before us we think that it conclusively appears from the circumstances stated that Dunlop delivered the letters to Dunnington for the use of Mrs. Payne, the intended donee, and in consummation of the donor's intention to make a present gift of the stock, and that thus the gift was completed.

The case at bar is strikingly similar to that of *In re Mills' Estate,* 172 App. Div. 530, 158 N. Y. S. 1100 (affirmed in a memorandum opinion, 219 N. Y. 642, 114 N. E. 1072). D. O. Mills had for five years before his death given his son and daughter a Christmas present of $1,000,000 each. In December, 1909, while in California, he wrote a letter to his son, Ogden Mills, in New York, stating that he was giving both his daughter, Mrs. Reid, and this son, Ogden, 8,000 shares of stock, and that he would make up the difference, if any, between the value of the stock and the $1,000,000 by check. At the time the letter was written the stock was already in the possession and custody of Ogden Mills in New York. A few days after this letter was written, Ogden Mills joined his father and sister in California where D. O. Mills repeated his intention of making the gift. D. O. Mills died, however, before the stock was transferred and delivered by Ogden Mills to Mrs. Reid. After the death of D. O. Mills the tax authorities of the State of New York sought to levy an estate tax on this stock, contending that no valid gift had been made. The court, however, sustained the gift both to Ogden Mills and to Mrs. Reid, saying (158 N. Y. S., at page 1105):

"The gift to Mrs. Reid should be sustained upon the principle that the delivery was made to Ogden Mills for her benefit and that thenceforth he held the securities as her trustee. Delivery to a third person for the benefit of another is sufficient to support a gift *inter vivos.* * * * *

"It would have been a useless ceremony for Mr. Mills to

require his son to deliver him the securities, and then for Mr. Mills to redeliver them to the son for the use and benefit of Mrs. Reid. Instead of going through that idle form, he adopted the only practicable way possible under the existing conditions, and allowed the securities to remain in the possession of his son for delivery to Mrs. Reid. *Caylor* v. *Caylor's Estate* (1899), 22 Ind. App. 666, 52 N. E. 465, 72 Am. St. Rep. 331.

"We think it is conclusively shown by the record in this case that the donor, Mr. Mills, parted with dominion over this stock to his son and daughter and placed it beyond his power to resume control, had he wished to do so. As to him, the title to the stock was irrevocably in the son and daughter, and there was a valid gift of the stock *inter vivos*."

See also, *Martin* v. *McCullough*, 136 Ind. 331, 34 N. E. 819; *Northern Trust Co.* v. *Swartz*, 309 Ill. 586, 141 N. E. 433; *Grant Trust & Savings Co.* v. *Tucker, supra.*

The view we have taken of the matter makes it unnecessary that we decide whether there was sufficient corroboration of the testimony of Mrs. Payne that the letters signed by Cameron Dunlop on the night of August 23 were delivered to her and by her delivered to Dunnington to meet the requirements of Code, sec. 6209.

The decree appealed from will be reversed and a final decree will be here entered adjudging and decreeing that the 200 shares of stock in controversy, together with the dividends accruing thereon since August 29, 1938, are the property of Elvira V. Payne, the appellant. The appellant will recover her costs of the executors of the last will and testament of Cameron Dunlop, deceased.

*Reversed and final decree.*