ANNA PARHAM SINCLAIR, INDIVIDUALLY AND AS EXECUTRIX OF, AND SOLE
   DEVISEE AND LEGATEE UNDER THE LAST WILL AND TESTAMENT OF N. A.
   SINCLAIR, DECEASED, v. EFFIE S. TRAVIS, A WIDOW; RUTH TRAVIS
   AND DOROTHY TRAVIS.

(Filed 3 February, 1950.)

**1. Gifts § 1—**

A letter written by the payee in transmitting to the maker a note for
execution, declaring that the payee had and does will the indebtedness
thereby evidenced to his grandchildren, the children of the maker, so that
in case of his previous death the notes would be the property of his grand-
children, is insufficient to constitute a gift *inter vivos* to his grandchildren,
there being nothing in the language to show present donative intent, and
there being neither actual nor constructive delivery of the notes to them.

**2. Trusts § 3a—**

A letter written by the payee in transmitting to the maker a note for
execution, declaring that the payee had and does will the indebtedness
thereby evidenced to his grandchildren, the children of the maker, so that
in case of his previous death the notes would be the property of his grand-
children, is insufficient to establish an express trust.

**3. Wills § 4—Asserted contract to devise notes to maker's children held
   not supported by consideration and unenforceable.**

The maker of a note executed a deed of trust securing the note and
such other indebtedness as might be incurred by the maker to the payee
within three years thereafter. Within the three year period, the maker
became further indebted to the payee, and executed another note for such
amount, bearing the notation that it was secured by the deed of trust.
The maker testified that the payee wrote a letter in transmitting the
second note to her for execution, which declared that the payee had or does
will the indebtedness to his grandchildren, the maker's children, so that
in case of his previous death the notes would become the property of his
grandchildren, and that she signed the second note because of the letter.
*Held:* The maker was already under contractual obligation to sign the
second note, and therefore the letter cannot constitute a valid considera-
tion for an asserted contract to devise the notes to the maker's children.

APPEAL by plaintiff from *Bobbitt, J.,* at May 1949 Civil Term, of
MOORE.

Civil action brought against defendant Effie S. Travis to recover on
two certain promissory notes given by her to N. A. Sinclair, and for the
foreclosure of a deed of trust allegedly securing the notes,—in which
action Ruth Travis and Dorothy Travis were later made defendants, and
filed answer.

In the pleadings filed by the parties these admissions were made, and,
upon the trial in Superior Court, were offered in evidence:

(1) That the plaintiff is a resident of Franklin County, State of
North Carolina, and is the duly appointed, qualified and acting executrix

of, and the sole devisee and legatee under the last will and testament of N. A. Sinclair, deceased;

(2) That on 26 January, 1937, for value received, defendant Effie S. Travis executed and delivered to N. A. Sinclair a promissory note under seal in the sum of $2,423.00, payable to the order of N. A. Sinclair one year after date, with interest, bearing this notation "Secured by deed of trust of even date to Robert H. Dye, Trustee";

(3) That on 25 March, 1938, for value received, defendant Effie S. Travis executed and delivered to N. A. Sinclair a promissory note under seal in the sum of $1,270.00, payable to the order of N. A. Sinclair one year after date—bearing this notation: "Secured by deed of trust to R. H. Dye";

(4) That on 26 January, 1937, in order to secure the payment of the promissory note in the sum of $2,423.00, defendant Effie S. Travis, executed and delivered to Robert H. Dye, Trustee, as party of the second part, a deed of trust in Moore County, N. C., duly probated and registered on 3 May, 1937, in Book of Mortgages No. 63 at page 5 in office of register of deeds of Moore County, North Carolina—the deed of trust containing the recital that "Whereas it has been agreed that the payment as well of said indebtedness as of such other indebtedness as may be incurred by her to him, within three years from this date, to be evidenced by her bonds to his order with a notation thereon indicating this security, and bearing interest at the rate of 6% per annum, payable annually, the entire indebtedness not exceeding the principal sum of five thousand dollars ($5,000.00), shall be secured by a conveyance of lands hereinafter described";

(5) That N. A. Sinclair died on 19 August, 1942, leaving a last will and testament, which was duly admitted to probate before Clerk of Superior Court of Cumberland County, N. C., on 25 August, 1942, which reads as follows:

"North Carolina

"Cumberland County

"I, N. A. Sinclair, of the County and State aforesaid, being of sound and disposing mind and memory, but considering the uncertainty of my earthly existence, do make, publish and declare this my Last Will and Testament, hereby revoking and declaring utterly void all other wills and testaments by me heretofore made:

I.

"I give, bequeath and devise unto my beloved wife, Anna Parham Sinclair, all of my property, of every nature and kind, and wheresoever situate; to have and to hold unto her, absolutely and in fee simple.

## II.

"I appoint my said wife, Anna Parham Sinclair, Executrix of this my Last Will and Testament, and direct that no bond shall be required of her.

"In Witness whereof, I, N. A. Sinclair, have hereunto set my hand and seal, this the 27th day of June, 1942.

(Signed)   N. A. SINCLAIR   (Seal)

"Signed, sealed, published and declared by N. A. Sinclair as his Last Will and Testament in the presence of us, who, at his request, and in his presence, and in the presence of each other, do subscribe our names as witnesses thereto.

(Signed)   HERMAN R. CLARK<br>ROBERT H. DYE,<br>Both of Fayetteville, N. C.";

(6) That by instrument, dated 27 October, 1943, and duly recorded, as indicated, Robert H. Dye, the trustee named in the said deed of trust, renounced the trusts conferred upon him as set out and described in the said deed of trust;

(7) That defendant Effie S. Travis has never made any payments either to N. A. Sinclair or to plaintiff on either one of the said two notes. And for purpose of obtaining trial at May Term, 1949, defendants admit that the said two notes of Effie S. Travis were found by plaintiff among the effects of N. A. Sinclair after his death.

Plaintiff further alleges, in her complaint, in substance, that she is the owner and holder of the said two promissory notes, and defendant Effie S. Travis is justly indebted to her in the sum of $2,423.00 with interest as stated, as evidenced by the said promissory note, dated 26 January, 1937; and that in addition thereto said defendant is further indebted to her in the additional sum of $1,270.00, with interest as stated, as evidenced by the promissory note dated 25 March, 1938; and that the whole of same indebtedness is due and unpaid, after demand and payment refused.

Defendants, answering, deny the further allegations set out in preceding paragraph, and for further defense to the matters and things alleged in the complaint, and as a counterclaim and cross-action in favor of defendants and against plaintiff, defendants make these averments:

(1) That defendant Effie S. Travis, a widow, is the daughter, and the defendants Ruth Travis and Dorothy Travis, her children, are the grandchildren of N. A. Sinclair, the testator of plaintiff executrix,—these grandchildren being greatly loved by their said grandfather during his lifetime;

(2) That at the time the note for $2,423.00 was executed by defendant Effie S. Travis to her father, N. A. Sinclair, he had reached an advanced age and was in feeble health, and a widower of a few years; that prior to the death of her husband, a short time before 26 January, 1937, he and she had acquired ownership of the property described in the complaint, in Southern Pines, Moore County, N. C., and after the death of her husband, she continued to reside with her children in her said residence in Southern Pines, and after the death of the husband of defendant Effie S. Travis, and the father of her co-defendants, she found herself embarrassed in debt and her said father, the said N. A. Sinclair, voluntarily came to her assistance and advanced to her $2,423.00 evidenced by her note mentioned in the complaint; and that in order that these advances might be secured for the benefit of said two children, she "for the purpose and at the suggestion of her said father executed to her said father . . . the promissory note of $2,423.00 . . . and to secure its payment at the same time executed and delivered the deed of trust to Robert H. Dye, Trustee," etc.,

(3) That on 26 January, 1937, the said sum of $2,423.00 was the only amount defendant Effie S. Travis owed her father; but that it was provided in the deed of trust that it was executed for the purpose of securing the payment of the $2,423.00 note, and such other indebtedness as might be incurred by her to her father within three years from the date of said deed of trust "to be evidenced by her bonds" as shown in the admitted facts;

(4) That more than a year later, to wit, on 28 March, 1938, defendant Effie S. Travis duly received a letter from her father, N. A. Sinclair, written from the Hotel Sir Walter in the city of Raleigh, North Carolina, reading as follows:

"DEAR EFFIE:

"I have been very far from well since I wrote you last. I enclose note for you to sign and return to me at Fayetteville. Your last note was Jany 26, 1937—since then I have loaned you 14 payments of $80—which amounts to $1120—and $150 for taxes—totalling $1270—Understand that I am not charging you anything that I have sent you for yourself or the children—but only my payments on the property—and I have and do will to Ruth and Dorothy your indebtedness and notes to me, so in case I die before you do—or they do—these notes will be the property of the children and no one else will have any interest in them.

"With love to you & Dorothy

N. A. SINCLAIR

"Keep this letter carefully as it will protect the children after my death if any question should arise about my will.

DAD";

(5) That in the said letter just referred to, there was enclosed the promissory note in the sum of $1270;

(6) That at the time defendant Effie S. Travis received the said letter and the note from her father, she was under no legal obligation or liability to him to sign or deliver the note; but that "in consideration that upon the execution and delivery of said additional promissory note in the sum of $1270," it and the entire indebtedness due by her to her father evidenced by her note for $2423 should thereafter become the property of her children, Ruth Travis and Dorothy Travis, "she signed and returned to her said father for safe custody with her father for the benefit of her said children the said promissory note in the sum of $1270 . . . only upon said condition and distinct agreement with her said father, and by agreement with her said father at said time defendant retained possession of the said letter from her father . . . for the benefit and as the agent of her said children with the distinct agreement and understanding with her said father that the said letter should be construed as, and would have the effect of, a specific transfer and assignment of said two promissory notes . . . at said time to her said children . . . and that thereafter the said N. A. Sinclair would only hold possession of said two notes for the benefit of" her said children;

(7) That by reason of the agreements aforesaid between defendant Effie S. Travis and her father, her said children became, and are now, the owners in their own right of both of the said notes, and the security therefor,—whether construed in law as a gift in the lifetime of the said N. A. Sinclair to defendants, Ruth Travis and Dorothy Travis, or as a trust in said notes and property created for the benefit of said defendants by said N. A. Sinclair under the facts alleged, or by reason of other legal construction applicable to the facts alleged:

(8) That after the transactions between defendant, Effie S. Travis, and her father as alleged, and after he had become still more enfeebled by ill health and advanced age, he married the plaintiff and lived but a short time thereafter and died, leaving the last will and testament alleged in the complaint; but that at no time after he married the plaintiff was he the owner of said notes; and that plaintiff does not now own them or any interest therein.

Upon these allegations defendants pray that plaintiff take nothing by her action, and that the defendants, Ruth Travis and Dorothy Travis, be declared the owners in their own right of said notes and the deed of trust, and that plaintiff be ordered to deliver same to said defendants.

Plaintiff replying denies in material aspect all averments of the further answer and counterclaim and cross-action of defendants, in conflict with allegations of the complaint, and she admits that after the alleged

transactions between defendant, Effie S. Travis, and plaintiff's testator, he and plaintiff were married on 17 October, 1939.

Defendant, Effie S. Travis, as a witness for defendants upon the trial in Superior Court, identified the letter of 28 March, 1938, alleged to have been received by her from her father, as being in his handwriting, and same was offered in evidence,—and she testified that she signed the note enclosed in the letter. Then she was asked these questions and gave the answers indicated: "Q. Why did you sign that note, Mrs. Travis?" "A. Because of that letter." Objection—overruled—Exception. Motion to strike—denied—Exception. Exception No. 2. "Q. State whether or not you would have signed that note but for that letter?" Objection—overruled—Exception No. 4. "A. I would not." Motion to strike—denied—Exception No. 5.

The witness further continued by saying that after she signed the note, she mailed it to her father at Fayetteville; that at the time she received the letter of 28 March, 1938, the original note of $2423 had not been returned to her, and it was the only indebtedness she owed her father. And on cross-examination, the witness, looking at the two notes in question, said that no endorsements appear on the back of them.

At the close of all the evidence plaintiff moved for instructed verdict in her favor on issue as to ownership of the notes. Motion denied—Exception No. 6.

The case was submitted to the jury on these issues:

"1. Did the defendant Effie S. Travis execute and deliver to her father, N. A. Sinclair, the testator of the plaintiff, the promissory note in the sum of $1270.00 described in the pleadings in consideration of the statements contained in N. A. Sinclair's letter of March 28, 1938, as alleged in the Answer?

"2. If so, was the $2423.00 note described in the pleadings the only note and indebtedness of Mrs. Effie S. Travis to her father, N. A. Sinclair, outstanding at the time of said letter of March 28, 1938, and of the execution of said $1270.00 note?

"3. Is the plaintiff the owner and holder of the two notes described in the pleadings herein?

"4. Are the defendants Ruth Travis and Dorothy Travis the owners and holders of the two notes described in the pleadings herein?"

Plaintiff objected to the first and second issues submitted. Exception No. 8.

The jury, under peremptory instructions from the court, answered the first, second and fourth issues "Yes," and the third "No."

Judgment in accordance therewith was entered by the court.

Plaintiff appeals therefrom and assigns error.

*Malone & Malone and W. D. Sabiston, Jr., for plaintiff, appellant.*
*Spence & Boyette for defendants, appellees.*

WINBORNE, J.   While there are extensive allegations of fact in support
of the position taken by defendants in this action, the evidence pivots
around the letter of 28 March, 1938, from N. A. Sinclair, plaintiff's
deceased husband, and testator, to his daughter, the defendant Mrs. Effie
S. Travis.   Hence, decision on this appeal is determinable, in the main,
upon proper construction as to the meaning of this letter.   Defendants
allege and contend that the defendants, Ruth Travis and Dorothy Travis,
granddaughters of N. A. Sinclair, are the owners of the two notes on
which this action is based—for that the letter created (1) a gift *inter
vivos* from N. A. Sinclair to them; or (2) a trust in said notes for the
benefit of them; or (3) an enforceable contract to devise said notes to
them.

Plaintiff, on this appeal, challenges these contentions in this Court by
assignments based on exception to denial by the trial court of her request
for instructed verdict in her favor on the issue as to ownership of the
notes, and on exceptions to peremptory charge of the court on which
verdict was returned, and judgment entered.

The subject of gifts *inter vivos* has been under consideration, and
treated by this Court, and pertinent authorities cited and assembled, in
several recent decisions, among which are these: *Cartwright v. Copper-
smith,* 222 N.C. 573, 24 S.E. 2d 246, and *Buffaloe v. Barnes,* 226 N.C.
313, 38 S.E. 2d 222; petition to rehear in the latter case being denied in
written statement 226 N.C. 778, 39 S.E. 2d 599.

In the latter case, *Buffaloe v. Barnes,* preferred stock in a corporation
was the subject of the alleged gift *inter vivos.*   *Devin, J.,* writing the
opinion for this Court, summarizes the law in this manner: "To consti-
tute a gift there must be an intention to give, and the intention must be
consummated by a delivery of, and loss of dominion over, the property
given, on the part of the donor.   *Jones v. Fullbright,* 197 N.C. 274, 148
S.E. 229; *Nannie v. Pollard,* 205 N.C. 362, 171 S.E. 341.   To complete
a gift *inter vivos* there must be first the intention to give and then the
delivery 'as it is the inflexible rule that there can be no gift either *inter
vivos* or *causa mortis* without the intention to give and the delivery.'
*Newman v. Bost,* 122 N.C. 524, 29 S.E. 848; *Bynum v. Bank,* 221 N.C.
101, 19 S.E. 2d 121.   'In order to a valid gift of personal property *inter
vivos* there must be an actual or constructive delivery with present intent
to pass the title.'   *Parker v. Mott,* 181 N.C. 435, 107 S.E. 500.   Donative
intent is an essential element.   24 A.J. 738, 770.   To constitute delivery
of shares of stock as the consummation of a valid gift *inter vivos* the
donor must divest himself of all right and title to the stock and of all

dominion over it. *Phillips v. Plastridge,* 107 Vt. 267, 99 A.L.R. 1074; *Payne v. Tobacco Trading Corp.,* 179 Va. 156, 18 S.E. 2d 281; *Pomerantz v. Pomerantz,* 19 A. 2d 713 (Md.). There must be an intention to make a present gift accompanied by a delivery of the thing given or the means of obtaining it. *Payne v. Tobacco Trading Corp., supra,* and *Pomerantz v. Pomerantz, supra.* It cannot be made to take effect in the future. *Askew v. Matthews,* 175 N.C. 187, 95 S.E. 163. The transaction must show a completely executed transfer to the donee of the present right of property and possession. *Thomas v. Houston,* 181 N.C. 91, 106 S.E. 466. Doubts must be resolved against the gift. *Figuers v. Sherrell,* 178 S.W. 2d 629."

In *Cartwright v. Coppersmith, supra,* negotiable notes, such as those involved in the present action, were the subject in litigation. Mrs. Whitehurst alleged that she was the sole owner of the notes by virtue of endorsement and delivery to her by Sarah E. Elliott, the payee named therein in her lifetime. There was evidence that the notes were endorsed to Mrs. Whitehurst without recourse under signature of Sarah E. Elliott, but there was none on them after death of Sarah E. Elliott. This Court, in opinion also by *Devin, J.,* stated: "Whether the transaction which constitutes the basis of the appellant's case be regarded as the assignment of a negotiable instrument (C.S. 3010, now G.S. 25-35), or a gift *inter vivos,* in order to vest the title to the notes in Mrs. Whitehurst it must have been completed by delivery, actual or constructive, and the burden was upon her to show this . . . to show not only the endorsement of the notes by Sarah E. Elliott, but also that the intention to give or assign them to her was completed by delivery, actual or constructive." Then the opinion goes on: "It is provided by C.S. 3010 (now G.S. 25-35) that if a negotiable note is made payable to order (as were these notes) the transfer from one person to another is 'by the endorsement of the holder, and completed by delivery.' To constitute delivery there must be a parting with the possession and with power and control over it by the maker or endorser for the benefit of the payee or endorsee. To constitute delivery it must be put out of possession of the endorser. *Barnes v. Aycock,* 219 N.C. 360, 13 S.E. 2d 611. An actual delivery, however, is not essential, and a constructive delivery will be held sufficient if made with the intention of transferring the title, but there must be some unequivocal act, more than the mere expression of an intention or desire." And then the Court states this as the general rule: " 'While it is not indispensable that there should have been an actual manual transfer of the instrument from the maker to the payee, yet, to constitute a delivery, it must appear that the maker in some way evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it and intentionally placing it under the power of the payee

or of some third person for his use.' " And the Court reiterates that "An intention to give is not a gift"; that "without delivery the gift is but a promise to give, and being without consideration is not obligatory, and may be revoked at will."

Applying these principles to the case in hand, the letter fails to show facts sufficient to constitute a gift *inter vivos*. The language used fails to show an intention to give, and then the delivery which are elements essential to the making of a gift *inter vivos*. Rather, the language used is more of testamentary character,—and being in the handwriting of N. A. Sinclair, nothing else appearing, it might have taken effect as a codicil to his will. But, as such, it was subject to be revoked (1) by the affirmative written declaration of N. A. Sinclair and, in his will which was probated, he did revoke all other wills and testaments theretofore made by him, and (2) by operation of law, upon the subsequent marriage of the testator, G.S. 31-6, and he subsequently married.

Now, as to the second contention, that a trust in the notes for the benefit of the granddaughters was created: "An express trust," as defined in *Wescott v. Bank,* 227 N.C. 39, 40 S.E. 2d 461, is a " 'fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it' . . . The term signifies the relationship resulting from the equitable ownership of property in one person entitling him to certain duties on the part of another person holding the legal title . . . To constitute this relationship there must be a transfer of the title by the donor or settler for the benefit of another . . . The gift must be executed rather than executory upon a contingency." See also Annotation 96 A.L.R. 383 on subject "May unconsummated intention to make a gift of personal property be made effective as a voluntary trust."

Applying these principles to the language of the letter of N. A. Sinclair, in the light of attending circumstances, the essentials of an express trust are lacking—just as are the essential elements of a gift *inter vivos*.

As to the third contention, that is, that the letter, under the attending circumstances, created an enforceable agreement by N. A. Sinclair to give the notes to his grandchildren, careful consideration of the facts of record fails to support this contention. It is contended that N. A. Sinclair, in his letter, made an offer which was accepted by Mrs. Travis, and complied with by her in signing the note of $1270 and returning same to him in conformity with his letter. In this connection, appellants challenge the competency of the testimony of Mrs. Travis to the effect that she signed the $1270 note "because of that letter," and that she would not have signed it, but for the letter. Passing but not deciding the question, the legal effect of this testimony, in the face of her written

agreement, set forth in the deed of trust which she admits she executed to R. H. Dye, Trustee, as security for the first note, fails to alter such agreement. She there agreed "that the payment as well of said indebtedness as of such other indebtedness as may be incurred by her to him (that is, to N. A. Sinclair) within three years from this date (that is, 26 January, 1937), to be evidenced by her bonds to his order with a notation thereon indicating this security . . . the entire indebtedness not exceeding the principal sum of five thousand ($5000.00) dollars, shall be secured by a conveyance of lands hereinafter described." And the letter indicates that N. A. Sinclair had loaned to her $1270 within the period stated, and it is admitted of record that the note is for that amount, and bears upon its face the notation that it is "secured by deed of trust to R. H. Dye." It would seem apparent that in signing the note Mrs. Travis was doing only what she had agreed and was obligated to do long before the letter was written. And it is generally held that "a promise to perform an act which such promisor is already bound to perform is insufficient consideration for a promise by the adverse party." 12 Am. Jur. 607, Contracts, Section 113. Thus there is here no new consideration, and no new agreement.

· Hence, we hold that, on this record, defendants have failed to show ownership of the notes, and plaintiff was entitled to the instruction requested on the issue of ownership, and is entitled to judgment in accordance with this opinion.

Reversed.