LOTTIE LEE WILLIAMS v. MARGARET LEE MULLEN AND JAMES L. TALTON, CO-ADMINISTRATORS OF THE ESTATE OF LUCY LEE BARBEE

No. 7611SC317

(Filed 6 October 1976)

1. Trusts § 13— express trust — essentials

The essentials of a valid express trust are: (1) sufficient words to create it; (2) a definite subject matter; (3) an ascertained object; and (4) designated beneficiaries.

2. Trusts § 13— parol trust in personalty — enforceability

It is well established in this jurisdiction that a trust in personalty may be created by parol, and that no particular form of words is required for the purpose, and that the same will be recognized and enforced whenever it is manifest that a trust is intended.

**3. Trusts § 19— oral express trust alleged — insufficient intention shown**

In an action to recover certain bonds or proceeds therefrom allegedly due plaintiff under an oral express trust, the trial court erred in failing to grant defendants' motion for directed verdict, since the evidence did not show a sufficient intention to create a trust, but at most tended to show an ineffective gift of the bonds by intestate to plaintiff.

APPEAL by defendants from *Brewer, Judge.* Judgment entered 16 November 1975 in Superior Court, JOHNSTON County. Heard in the Court of Appeals 31 August 1976.

In this action plaintiff seeks to recover certain bonds or proceeds therefrom allegedly due her under an oral express trust. In her complaint she alleges that decedent, her sister, died intestate on 7 June 1973 and defendants are serving as administrators of the estate; that prior to her death intestate gave plaintiff an interest in certain bonds issued by the Pentecostal Holiness Church Extension Loan Fund, Inc. (Pentecostal), either as owner, as joint tenant with right of survivorship, or as the beneficiary of a trust; and that she was entitled to possession of the bonds upon decedent's death.

Plaintiff asked the court to adjudge that defendants hold the bonds "as constructive trustees by operation of law" for the beneficial use of plaintiff; to declare plaintiff the owner of the bonds, or the proceeds therefrom, by virtue of a gift from intestate; and to require defendants to deliver possession of the bonds, or render an accounting for the proceeds therefrom, to plaintiff.

Defendants filed answer alleging that the bonds were the property of the estate and that plaintiff was not entitled to them.

At trial the parties stipulated that between 1962 and 1965 intestate purchased forty $1,000 bonds from Pentecostal. (The forty bonds were issued to Mrs. Lucy L. Barbee.) In January 1966 Pentecostal issued a $2,000 bond in the names of "Mrs. Lucy L. Barbee or Lottie Lee Williams." Plaintiff presented as a witness Alton Bridgers, a nephew of intestate and of plaintiff, whose testimony is summarized in pertinent part as follows:

From 1956 until her death in 1973, he would occasionally advise intestate with respect to her financial affairs. On sev-

eral occasions intestate talked with him about giving the bonds in question to plaintiff. He advised intestate "that I would never give anything away that I had until I was assured that I did not need it." Shortly before January of 1966 intestate told him she was going to write Pentecostal (whose office was in Georgia) and have a bond issued in her name and plaintiff's name and also have plaintiff's name put on the other bonds. Later, intestate told him she had received a letter from Pentecostal but that "she wasn't about to send $40,000 in an envelope for them to stamp somebody's name on it."

Several weeks later intestate obtained a short printed form made out to Pentecostal with a statement thereon to the effect "that Lottie Lee Williams was the owner of any interest, any bonds, that she might cash if the need was to arise" to meet medical expenses or other needs due to sickness; "that she could cash any or all of these bonds that was in Georgia at that time and if any interest or any money was left at Mrs. Barbee's death it would automatically [show] Mrs. Lottie Lee Williams the beneficiary." (On cross-examination it was established that this form was never discovered and that Pentecostal had no copy of it on file.)

On direct examination he stated that he had observed the form signed by intestate and on the same date she told him: "As of this date I am making Lottie Lee Williams an owner— that any interest, any holdings that I have in this Pentecostal Holiness Fund will be hers to use at anytime that she wanted to if the need was to arise and at my death what is left, if any, of the $42,000 bonds, which $40,000 at that time was not shown with Mrs. Williams name but the $2,000 one was—that any and all remaining funds at her death would be Lottie Lee Williams."

Prior to 1966 intestate received from Pentecostal semi-annual interest checks in her name alone. After January of 1966 the interest checks were made payable to intestate and plaintiff. Over objection he testified that the net worth of intestate's estate in 1966 was approximately $150,000 to $160,000; he estimated the estate at the time of her death to be approximately $192,000.

On cross-examination he identified intestate's signature on a 1969 tax form mailed to Pentecostal stating that "all bonds with the following exception are in the name of Lucy Lee Bar-

bee, the exception being 24-10, $2,000, Lucy Lee Barbee and Lottie Lee Williams." He also identified intestate's signature on a letter written in November 1969 to Rev. A. D. Beacham of Franklin Springs, Georgia, in which intestate stated: "This is to request that you forward to me the interest on *my* bonds each six months as it becomes due." (Emphasis added.)

Defendant presented as a witness John A. Wilson, an accountant, who testified that he had filed appropriate income and intangible tax returns for intestate from 1961 until her death in 1973; that he had never prepared for intestate a gift tax return pertaining to the bonds or income therefrom.

Issues were submitted to and answered by the jury as follows:

> "1. Did Lucy Lee Barbee create an express, oral trust of the church bonds in the amount of Forty Thousand ($40,000.00) Dollars for the use and benefit of Lottie Lee Williams?

> ANSWER: Yes.

> "2. Did Lucy Lee Barbee create an express, oral trust of the church bond in the amount of Two Thousand ($2,000.00) Dollars for the use and benefit of Lottie Lee Williams?

> ANSWER: Yes."

From judgment predicated on the verdict providing that plaintiff recover $42,000, plus interest and costs, defendants appealed.

*Mast, Tew, Nall & Moore, P.A., by George B. Mast and Joseph T. Nall, for plaintiff appellee.*

*L. Austin Stevens and R. E. Batton for defendant appellants.*

BRITT, Judge.

Defendants assign as error the failure of the trial court to grant their motions for directed verdict interposed at the close of plaintiff's evidence and renewed at the close of all the evidence. We think the assignment has merit.

The question presented is whether the evidence was sufficient to show that intestate created an express, oral trust in the

Williams v. Mullen

bonds for the use and benefit of plaintiff. We hold that it was not.

[1]  " 'Express,' or as they sometimes are called, 'direct,' trusts are those trusts intentionally created by the direct and positive act of the settlor, by some writing, deed, or will, or an oral declaration. . . ." 76 Am. Jur. 2d, Trusts § 15, p. 263. The essentials of a valid express trust are: (1) sufficient words to create it; (2) a definite subject matter; (3) an ascertained object; and (4) designated beneficiaries. Lee, North Carolina Law of Trusts § 1a, p. 2.

[2]  Concerning an express parol trust, the North Carolina Supreme Court has stated that: "The declaration of a trust in personalty is not required to be in writing, and if in writing, it may be contained in letters or other writings. . . . No technical terms need be used. It is sufficient if the language used shows the intention to create a trust, clearly points out the property, the disposition to be made of it, and the beneficiary." *Witherington v. Herring*, 140 N.C. 495, 497, 53 S.E. 303, 304 (1906). "It is well established in this jurisdiction that a trust in personalty may be created by parol, and that no particular form of words is required for the purpose, and that the same will be recognized and enforced WHENEVER IT IS MANIFEST THAT A TRUST IS INTENDED. . . ." (Emphasis added.) *Rousseau v. Call*, 169 N.C. 173, 85 S.E. 414 (1915).

[3]  Where competent evidence is introduced to establish a parol trust, it is the duty of the trial court to submit it to the jury, and it is for the jury to say whether the evidence is "clear, strong, cogent and convincing." *Taylor v. Wahab*, 154 N.C. 219, 70 S.E. 173 (1911). In the instant case, a sufficient intention to create a trust was not shown by the evidence. "The intention to create a trust must be sufficiently expressed, and the declaration of trust must show the intention with reasonable certainty. It must be clear that a trust was intended. It is necessary that there be a definite, unequivocal, explicit declaration of trust, or circumstances which show with reasonable certainty . . . that a trust was intended to be created. The declaration must show a desire to pass benefits through the medium of a trust and not through some related or similar instrumentality." 89 C.J.S., Trusts § 43, pp. 776-778.

In *Buffaloe v. Barnes*, 226 N.C. 313, 38 S.E. 2d 222 (1946), the testator purchased certain stock with his own funds and

had the certificates issued to himself and his niece as joint tenants with the rights of survivorship. At his death testator was in exclusive possession of the stock certificates. The court held that the transaction was not sufficient to create a gift or a trust. As stated by Professor Lee, "equity will not convert an imperfect gift into a declaration of trust." Lee, North Carolina Law of Trusts § 1d, p. 4. Intestate in the present case at most made an ineffective gift of the bonds.

In *Wescott v. Bank,* 227 N.C. 39, 40 S.E. 2d 461 (1946), the decedent attempted to create a trust fund for his grandfather by the deposit of money in a savings account in decedent's name. The court stated (p. 42) : "Here the essentials of an express trust are lacking. There was no evidence of a transfer or assignment of a present beneficial interest in the fund deposited in the defendant bank. There was only evidence of a desire that in the event of the depositor's death the grandfather should be the beneficiary."

In *Sinclair v. Travis,* 231 N.C. 345, 353, 57 S.E. 2d 394, 400 (1949), the court quoted with approval from *Wescott* as follows: "An express trust . . . is a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it . . . The term signifies the relationship resulting from the equitable ownership of property in one person entitling him to certain duties on the part of another person holding the legal title . . . To constitute this relationship there must be a transfer of the title by the donor or settlor for the benefit of another."

The trial court erred in denying defendants' motion for directed verdict. The question with respect to plaintiff's interest in the $2,000 bond because of its issuance to intestate or plaintiff was not raised on this appeal, therefore, we render no decision on that question.

For the reasons stated, the judgment is

Reversed.

Judges HEDRICK and MARTIN concur.