JULIA COURTS v. ANNIE PENN MEMORIAL HOSPITAL, INC.

No. 9221SC783

(Filed 20 July 1993)

**Gifts or Donations § 11 (NCI4th)— stock given to hospital—condition that foundation be named after donor's family—insufficiency of evidence to show condition at time of donation**

The trial court properly granted summary judgment for defendant hospital in plaintiff's action seeking the return of the gift of stock which she had donated to defendant hospital where plaintiff contended that the gift was made contingent upon defendant's naming its charitable foundation after her grandfather, but the evidence showed that the stock certificates

COURTS v. ANNIE PENN MEMORIAL HOSPITAL

[111 N.C. App. 134 (1993)]

were in fact delivered to defendant's president with no conditions attached in that plaintiff did not tell an attorney, friends, family, or any member of the hospital administration about her donation prior to signing over the stock certificates; when plaintiff went to Wachovia Bank to effectuate the transfer of the stock, she told no one that it was conditioned on a foundation being named for her family; in her phone conversations with defendant's president both before and after he received the stock certificates, plaintiff did not mention the conditional nature of the gift; at the time of the gift, defendant hospital had not even completed definite plans to establish a charitable foundation; plaintiff did not state any conditions for the gift on her IRS forms required for non-cash contributions; and only after she had made her gift did plaintiff learn about defendant's plans to establish a charitable foundation.

**Am Jur 2d, Gifts §§ 49-53.**

Appeal by plaintiff from Judgment entered 7 April 1992 by Judge William H. Freeman in Forsyth County Superior Court. Heard in the Court of Appeals 8 June 1993.

*Wright, Parrish, Newton & Rabil, by Melvin F. Wright, Jr. and Nils E. Gerber, for plaintiff-appellant.*

*Smith, Helms, Mulliss & Moore, by Amy S. Klass, for defendant-appellee.*

WYNN, Judge.

The plaintiff, Ms. Julia Courts, is a resident of Winston-Salem, North Carolina, where she has lived since 1927. Prior to relocating to Winston-Salem, Ms. Courts and her family resided in and around Reidsville, North Carolina, located in Rockingham County. Her grandfather, Dr. William James Courts, Sr., was a surgeon and prominent member of the Reidsville community whom Ms. Courts grew to admire and respect as she learned of his great contributions to the area.

When she started working in 1927, Ms. Courts commenced investing her earnings in the common stock of the R.J. Reynolds Tobacco Company and, later, R.J.R. Nabisco, Inc. [hereinafter "the stock"], and continued to invest her money in the stock for many years. In the course of purchasing the stock, Ms. Courts decided

to some day donate it to the defendant, the Annie Penn Memorial Hospital, Inc. [hereinafter the "Hospital"], located in Reidsville, in honor of her family.

Ms. Courts had at one time contemplated leaving the stock to the hospital in her will, but changed her plans in December 1988 when it appeared that R.J.R. Nabisco, Inc. was going to be acquired by private investors. On 6 December 1988, Ms. Courts removed stock certificates representing 7,954 shares of her stock from her safe deposit box at First Union National Bank and brought them to Wachovia Bank and Trust Company [hereinafter "Wachovia"], the transfer agent for the stock. At Wachovia, Ms. Courts endorsed the stock certificates and informed the bank representative that she wished to give the stock to the Hospital. She then telephoned the Hospital, obtained its identification number necessary for the stock transfer, and left a message for Mr. James Knight, who at that time was the Hospital president. Ms. Courts relayed the identification number to Wachovia and requested that the stock certificates be mailed to Mr. Knight at the Hospital.

Later on the afternoon of 6 December 1988, Mr. Knight returned Ms. Courts' telephone call, at which time she informed him that she was sending a gift to the Hospital. She did not identify the nature or the amount of the gift, preferring instead to surprise Mr. Knight. On or about 15 December 1988, Mr. Knight received the stock certificate representing 7,954 shares of common stock in the R.J.R. Nabisco Company and telephoned Ms. Courts to tell her that he had received the certificate and to accept it on behalf of the Hospital. Mr. Knight thanked Ms. Courts and inquired into the motivation for such a generous gift. Ms. Courts told Mr. Knight she had donated the stock to the Hospital in honor of or to honor her family.

In a letter dated 22 December 1988, Mr. Knight reiterated the Hospital's appreciation for the gift and informed Ms. Courts that the Hospital wanted to express its appreciation by recognizing Ms. Courts or her family. On 23 December 1988, Mr. Knight and Mr. Craig Cardwell, then Chairman of the Board of Trustees of the Hospital, met Ms. Courts for lunch. At that time, Ms. Courts more fully explained her family ties to Rockingham County, and Mr. Knight and Mr. Cardwell explained some of the Hospital's current projects to her in an apparent effort to obtain her input as to how the Hospital might best recognize her and her family.

COURTS v. ANNIE PENN MEMORIAL HOSPITAL

[111 N.C. App. 134 (1993)]

While there is some evidence that Ms. Courts suggested the money might aid the poor in paying their medical expenses, other evidence shows that Mr. Knight and Mr. Cardwell told Ms. Courts about current and future Hospital projects which might be funded by the income from the stock. At deposition Ms. Courts testified that she had not selected one of the suggested projects or voiced a preference of one over the others, "Because I didn't know. I wasn't there to see what was actually needed." And when asked if, therefore, she had wanted to leave that decision up to the Hospital, she replied, "That's right." Additionally, various area newspapers carried stories regarding the Courts' family history in Reidsville and reporting the generous donation given to the Hospital by Ms. Courts in honor of her family.

Prior to receiving the gift from Ms. Courts, the Hospital had been contemplating establishing a charitable foundation through which donations could be raised for the Hospital. Ms. Courts was informed of the Hospital's efforts in this area, and she became increasingly interested in having such a foundation established in her grandfather's name. The Hospital had set up a "core group," or committee, to study the details of establishing such a foundation. Ms. Courts apparently believed that the foundation was to be named for her family and inquired on occasion as to the progress of the Courts' Foundation. Additionally, she submitted to Mr. Knight a list of people whom she wanted to sit on the foundation's board.

The Hospital did establish a charitable foundation on 5 April 1990, but, because of the apparent tradition that such a foundation should call to mind the name of the organization it supports, named it the Annie Penn Memorial Hospital Foundation. The Hospital informed Ms. Courts regarding the naming of the foundation in a letter dated 30 March 1990 from Mr. Willis Apple, then Chairman of the Board of Trustees. In that letter, Mr. Apple reiterated the Hospital's desire to show its appreciation for Ms. Courts' gift, and suggested that perhaps a Courts' Family Endowment could be established within the Foundation. Ms. Courts was very disappointed by the decision regarding the naming of the Foundation, refused to speak to any representative from the Hospital, and filed this lawsuit alleging that the gift of the stock had been conditioned on the Hospital's naming the foundation in honor of her grandfather. In fact, at the end of opposing counsel's examination of Ms. Courts during her deposition, he asked, "Ms. Courts, if the Hospital were willing to set up the William James Courts Endow-

COURTS v. ANNIE PENN MEMORIAL HOSPITAL

[111 N.C. App. 134 (1993)]

ment in that name and give it permanent publicity and notoriety in the press and otherwise, would that—?" Ms. Courts responded, "No, I wanted—I wanted what was originally intended, for which it was originally intended. I want to know why that couldn't happen." Counsel further asked, "So you weren't going to give the money unless its name was that name of the foundation. Is that right?" Ms. Courts responded, "That's right."

Ms. Courts filed this lawsuit on 4 June 1991, seeking the return of the gift she had donated to the Hospital. On 20 March 1992, the Hospital made a motion for summary judgment, which motion the trial court granted on 7 April 1992 after reviewing the pleadings, depositions, answers to interrogatories, the affidavit in support of the motion, and the briefs submitted by the respective counsel and hearing counsels' arguments. From the Judgment granting the defendant's motion for summary judgment, the plaintiff appeals.

The plaintiff-appellant's sole argument on appeal is that summary judgment should not have been granted in favor of the defendant-appellee. In support of this contention, the plaintiff argues that there exists a genuine issue of material fact with regard to the nature of her gift. We disagree.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact so that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56.

In order to constitute a valid gift, there must be present two essential elements: 1) donative intent; and 2) actual or constructive delivery. *Holloway v. Wachovia Bank & Trust Co.*, 333 N.C. 94, 100, 423 S.E.2d 752, 755 (1992); *Sinclair v. Travis*, 231 N.C. 345, 351, 57 S.E.2d 394, 399 (1950); *Buffaloe v. Barnes*, 226 N.C. 313, 318, 38 S.E.2d 222, 225, *reh'g denied*, 226 N.C. 778, 39 S.E.2d 599 (1946). These two elements act in concert, as the present intention to make a gift must be accompanied by the delivery, which delivery must divest the donor of all right, title, and control over the property given. *Buffaloe*, 226 N.C. at 318, 38 S.E.2d at 225; *see also Thomas v. Houston*, 181 N.C. 91, 93, 106 S.E. 466, 468 (1921) (the intention must be executed by a complete and unconditional delivery). The intention to give, unaccompanied by the delivery, constitutes a mere promise to make a gift, which is unsupported by consideration, and, therefore, non-obligatory and revocable at will. *Sinclair*,

231 N.C. at 353, 57 S.E.2d at 400. Likewise, delivery unaccompanied by donative intent does not constitute a valid gift. *See Plymouth Pallett Co. v. Wood*, 51 N.C. App. 702, 277 S.E.2d 462, *disc. rev. denied*, 303 N.C. 545, 281 S.E.2d 393 (1981).

A person has the right to give away his or her property as he or she chooses and " 'may limit a gift to a particular purpose, and render it so conditioned and dependent upon an expected state of facts that, failing that state of facts, the gift should fail with it.' " *Charlotte Park & Recreation Comm'n v. Barringer*, 242 N.C. 311, 321, 88 S.E.2d 114, 123 (1955) (quoting *Grossman v. Greenstein*, 155 A. 190 (Md. 1931) ), *cert. denied, Leeper v. Charlotte Park & Recreation Comm'n*, 350 U.S. 983, 100 L.Ed. 851 (1956). An unconditional *inter vivos* gift, however, once given is irrevocable. *See Atkins v. Parker*, 7 N.C. App. 446, 450-51, 173 S.E.2d 38, 41 (1970); *see also Thomas*, 181 N.C. at 94, 106 S.E. at 468 (a gift *inter vivos* is absolute and takes effect at the time delivery is completed, provided there are no conditions attached). The intent of the donor to condition the gift must be measured at the time the gift is made, as any "undisclosed intention is immaterial in the absence of mistake, fraud, and the like, and the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It judges of his intention by his outward expressions and excludes all questions in regard to his unexpressed intention." *Howell v. Smith*, 258 N.C. 150, 153, 128 S.E.2d 144, 146 (1962) (intent in context of a contract).

There is no question in the present case regarding the delivery of the stock. Ms. Courts went to Wachovia and had the stock certificates issued in the name of the Hospital, and those certificates were subsequently mailed to Mr. Knight in his capacity as president of the Hospital. *See Buffaloe*, 226 N.C. at 318, 38 S.E.2d at 225 (stating the general rule that where the owner or purchaser of shares of stock has the certificate issued in the name of another, and so registered on the books of the corporation, the transaction is regarded as a gift completed by constructive delivery). The issue with which we are concerned on appeal then stems from the element of donative intent and requires this Court to determine whether Ms. Courts attached any conditions to her gift at the time she delivered the stock to the Hospital.

Ms. Courts contends that she donated the stock on the condition that the Hospital name its charitable foundation after her

grandfather. The evidence in the record, however, suggests that the gift of the stock was unconditional. Before signing over the stock certificates, Ms. Courts did not discuss her donation with an attorney, friends, or any member of the Hospital administration. There is no evidence to suggest that when she went to Wachovia to effectuate the transfer of the stock that she told anyone the transfer was conditioned on a foundation being named for her family. Moreover, in her phone conversations with Mr. Knight, both before and after he received the stock certificate on behalf of the Hospital, she did not tell him that the gift was conditioned on such a foundation being established. Additionally, it appears that at the time of the gift the Hospital had not even completed definite plans to establish a charitable foundation. Furthermore, Ms. Courts completed IRS Form 8283 as required for non-cash charitable contributions when filing her income tax returns in 1988, 1989, and 1990, which form has a section which must be completed if any conditions were placed on a charitable contribution. The forms completed by Ms. Courts indicate that there were in fact no conditions placed on the gift.

The record indicates that it was only after she had made an unconditional gift of the stock to the Hospital that Ms. Courts learned about the Hospital's plan to establish a charitable foundation. It was then that she conceived the idea that her donation should be used to fund the foundation and that the foundation should bear her grandfather's name. It is evident, however, that there was some misunderstanding between the Hospital and Ms. Courts regarding the naming of the foundation. Ms. Courts referred to the foundation as the "Courts Foundation" in Mr. Knight's presence and neither he nor anybody else at the Hospital corrected her misconception. Moreover, it is apparent that the Hospital did not explain to Ms. Courts in detail the nature of the foundation, the procedure used to select a name for the foundation, or that, while the foundation itself should be named for the Hospital, within the foundation a lasting endowment could be established in the Courts family name.

The record illustrates that the Hospital, in accepting Ms. Courts' generous gift, failed to take great care to see that it was adequately recognized in a manner acceptable to the generous donor, and failed to ensure that there were no misunderstandings regarding how it intended to utilize the gift. Essentially, it appears that the Hospital and its administration, though initially openly ap-

preciative of the gift, became insensitive to the fact that the elderly Ms. Courts had unselfishly donated her life's savings to the Hospital. We do not wish to condone such callousness, as it will act only to discourage the generosity of private citizens necessary to serve the public good.

The law, however, does not require the Hospital to name its charitable foundation for Ms. Courts' family. As we have previously concluded, at the time Ms. Courts completed the stock transfer, which is the relevant time to examine her donative intent, she attached no conditions to her gift. It was only later, upon learning of the means by which the Hospital could show its appreciation for her gift and establish a lasting memorial to the Courts family, that she attached conditions to her gift. Such "after-the-fact" conditions are not recognized by the law. See Howell, 258 N.C. 150, 128 S.E.2d 144. To allow conditions to attach after the gift has been completed would effectively allow for the revocation of an unconditional gift, which the law does not permit. See Thomas, 181 N.C. 91, 106 S.E. 486. Moreover, to allow conditions to attach later would put the donee in a position fraught with uncertainty regarding his or her rights to the property received.

The evidence suggests that there was no genuine issue regarding the nature of Ms. Courts' gift to the Hospital. For the foregoing reasons, therefore, the decision of the trial court is,

Affirmed.

Judges JOHNSON and GREENE concur.