RELIANCE INSURANCE COMPANY v. NORTH CAROLINA NATIONAL BANK

No. 7826SC180

(Filed 16 January 1979)

1. Banks and Banking § 3— plaintiff as depositor — bank's duty to abide by agreement

Where plaintiff opened an account in defendant bank, provided its initial funding of $12,000, met with representatives of defendant and entered into a detailed agreement specifically delineating the conditions under which defendant could pay funds out of the account, plaintiff was a depositor of the defendant and could not be deprived of that status by the fact that defendant agreed to use the name of a contractor on the account or that defendant sent monthly banking statements and cancelled checks to the address of the contractor; therefore, defendant was required to comply strictly with its agreement with plaintiff in making payments from the account.

2. Banks and Banking § 3— unauthorized payment of levy against account — bank's notice of ownership of funds

The trial court properly concluded that funds in a checking account were not the property of a contractor but of plaintiff surety and that the funds were

not subject to a levy by the IRS against the property of the contractor, and defendant's contention that the "Trust Agreement" it entered into with plaintiff did not create a valid trust under the laws of N.C. was irrelevant, since the funds deposited in the account could only be disbursed by plaintiff; the "Trust Agreement" provided that defendant would pay over to plaintiff any monies in the account upon request by plaintiff; and defendant knew that plaintiff provided the initial funding of the account, that subsequent funding was from the contractor's assignment of future proceeds from bonded contracts and from plaintiff, and that the funds in the account were held for the sole purpose of discharging plaintiff's obligation under its bond.

**3. Banks and Banking § 11— unauthorized payment of check—no obligation of depositor to mitigate damages**

Where defendant bank made an unauthorized payment from plaintiff's account to the IRS, plaintiff had no duty to mitigate its damages by filing a claim for a refund with the IRS, since a depositor's funds are unaffected by any unauthorized payment and the depositor may sue either the person to whom the deposit has been paid without authority or the bank, and since the bank may not fail to take action to recover the wrongful payment and then plead as a defense the failure of the depositor to take action against the wrongful payee when both parties have a similar opportunity to remedy the wrong.

APPEAL by defendant from *Martin, Judge (Harry C.).* Judgment entered 1 November 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals on 5 December 1978.

This is a civil action wherein Reliance Insurance Company ("Reliance") seeks to recover $7,164.21 plus interest from North Carolina National Bank ("Bank") for refusing to honor a check drawn on a special account at the Bank. The defendant answered denying liability and alleging as an affirmative defense that it should not be liable because plaintiff failed to take any action to mitigate its damages. After a trial without a jury, Judge Martin made findings of fact, which, except where quoted, are summarized below:

On 31 August 1973, representatives of Rustin Construction Company, Inc., ("Rustin"), Reliance, and the Bank met to discuss the opening of an account for Rustin. It was explained to representatives of the Bank that Rustin wished to open an account entitled "Rustin Construction Company, Inc. — Special Account" and that Rustin and Reliance wanted the Bank to enter into an agreement entitled "Trust Agreement." The pertinent portions of the "Trust Agreement" are as follows:

Whereas Surety [Reliance] has, at the request of Contractor [Rustin], issued a certain bond, . . . which bond has been furnished in connection with a certain construction contract of Contractor, hereinafter referred to as "Colonial Villa Apartments," and

Whereas Surety has certain rights at law and under the covenants contained in the Indemnity Agreement executed by Contractor as part of inducement to Surety furnishing suretyship to the Contractor, among which are rights of Surety to have all payments earned or to be earned by Contractor under Bonded Contracts applied to the payments of labor and material and charges of Contractor incurred in connection with the performance of Bonded Contracts;

Now, therefore, in consideration of the Surety refraining from action at the present time to enforce said rights but reserving the right to enforce them at any other time, the parties to this Agreement hereby agree as follows:

(1) The Contractor hereby authorizes the Bank to establish a trust account in said Bank. The name of the trust account shall be "Rustin Construction Company, Inc. Special Account."

(2) The Contractor agrees to deposit or cause to be deposited in the Bank all monies now due or to become due under the Bonded Contract listed in Schedule A.

(3) Bank agrees to deposit the proceeds of all monies received from said Bonded Contract from Contractor or from Surety, in said trust account.

(4) Withdrawals on said trust account shall be made by check bearing the signature of a representative designated by the Contractor and the countersignature of a representative or representatives designated by the Surety.

(5) The Contractor will issue and submit to the Surety for counter signature checks on said trust account solely for the purpose of paying labor and material charges and subcontractor's charges incurred in the performance of the Bonded Contract.

(6) The Bank, upon written request from the Surety, will pay over to the Surety any funds on deposit in said trust account and the proceeds of any monies received under said assignments after said request from the Surety. The Surety will use any such funds so received to indemnify itself for loss under said bond or to pay claims presented under such bond or to hold for collateral in connection with said bond, and the Surety will account to the Contractor for any such funds so received.

(7) The Bank, upon written notice to such effect from the Surety that bond has been discharged, shall pay over to the Contractor any balance remaining in said trust account at the time of receipt of such notice from the Surety and any proceeds subsequently received under said assignments on said Bonded Contract.

(8) There shall be no obligation or liability on the part of the Bank other than as set forth in this Agreement to deposit proceeds of monies received under the assignments to the trust account and to pay out funds in said trust account as provided herein. The Bank and the Surety shall have no obligation to assure that checks issued on said trust account are actually for payment of bona fide charges on said bonded job, said obligation being solely that of the Contractor.

A certified copy of corporate resolutions authorizing the opening and maintaining of a checking account was furnished to the Bank by Rustin. A signature card was prepared by the Bank that authorized Jason M. Rustin, President of Rustin Construction Company, Daniel H. Wilson, Attorney for Reliance, and Michael J. Buhr, local agent for Reliance, to execute checks on the special account and contained the further "instruction that checks must be signed by any combination of the two authorized signatures, one of which must be Mr. Rustin's."

The account was opened as a "commercial account" and was initially "funded by plaintiff's [Reliance's] draft No. 5222, dated August 30, 1973, in the amount of $12,000.00." Numerous checks were drawn on the account and all statements, cancelled checks, and deposit slips in connection with the special account were sent by the Bank to Rustin at its address shown on the signature card.

To the Bank, the term " 'special account' added to the designation of a bank account has no significance other than to distinguish that account from other accounts of the same depositor" and "is a customary banking practice at NCNB and in other banks in North Carolina."

On 26 August 1974, the Bank was served at its Bank Administration Department with a Notice of Levy by the Internal Revenue Service of the United States "on all monies and bank deposits of Rustin Construction held by NCNB." This Notice of Levy specifically referred to the special account. After being served with the Notice of Levy, the Bank, following its usual and customary practice, checked the account name, address, number and special instruction on the signature card against the Notice of Levy. By letter dated 26 August 1974, the Bank "advised Rustin Construction of the Service of the Levy and the steps NCNB was taking in response thereto." The Bank never received any response to this letter from Rustin and did not send any notice of the Levy to Reliance. On 5 September 1974, the Bank "debited the balance in the Account, in the amount of $7,164.21 to purchase an official check payable to the Internal Revenue Service in settlement of the tax levy." The check was mailed to the I.R.S. and a copy of the checking account debit was sent to Rustin in its monthly statement for September, 1974.

Mr. Daniel Wilson, attorney for Reliance, contacted the Bank and informed Mr. J. W. Kiser, Corporate Counsel and Senior Vice President of the Bank, that it should not have paid out the money to the I.R.S. in response to the tax levy because the funds belonged to Reliance and not to Rustin. Subsequently, the Bank checked with the I.R.S. for details of its procedures for handling a possible claim for a refund.

On 23 January 1975, Reliance presented to the Bank check number 0251 drawn on the account and made payable to Reliance in the amount of $7,164.21. The check was returned by the Bank unpaid and marked "NSF."

Thereafter, the Bank was informed by the I.R.S. that it "did not have sufficient information to make a determination with respect to the correctness of its levy" and in order to make a refund "it would require someone at NCNB or Reliance to state under penalties of perjury that (1) the funds in the Account ac-

tually belonged to Reliance, and (2) that the Account was a bona fide trust account in all respects under North Carolina law."

Mr. Kiser believed that the Bank did not have sufficient facts and information to meet the first requirement and "was not of the opinion that the Account was a bona fide trust account under North Carolina law." Mr. Kiser told Mr. Daniel Wilson of Reliance that the Bank, "as an accommodation to Reliance . . . would file a claim if the required information and opinions were furnished to NCNB by Reliance." Neither Reliance nor the Bank has filed any claim with the I.R.S. for wrongful levy.

Based on the foregoing findings of fact, the trial court made the following conclusions of law:

2. Under the terms of the Trust Agreement, a copy of which was retained by NCNB, Reliance was entitled to a notice of the levy made by Internal Revenue Service and NCNB failed to give Reliance such notice.

3. The Trust Agreement constituted a valid trust under the laws of North Carolina; therefore, the funds in the account did not belong to Rustin Construction.

4. The defendant, NCNB, had the same opportunity as did the plaintiff, Reliance, to file a claim with Internal Revenue Service for a refund of the funds wrongfully levied upon; therefore, Reliance was under no duty to mitigate its loss by making a claim against Internal Revenue Service for the wrongful levy.

From a judgment that plaintiff "have and recover of the defendant the sum of $7,164.21, plus interest as provided by law from January 23, 1975," defendant appealed.

*Miller, Johnston, Taylor & Allison, by H. Morrison Johnston, for plaintiff appellee.*

*Helms, Mulliss & Johnston, by Nancy Black Norelle and Robert B. Cordle, for defendant appellant.*

HEDRICK, Judge.

At the outset, we note that defendant, although properly grouping its exceptions and assignments of error in the record,

has failed to bring them forward in his brief as required by Rule 28(e) of the Rules of Appellate Procedure. We nevertheless proceed to treat the assignments of error in the record as though they had been properly brought forward.

The facts of this case are not in controversy. Defendant's assignments of error all relate to the trial court's conclusions of law. Defendant first contends that it was not required as a matter of law to give notice of the levy to Reliance because Reliance was not a depositor of the Bank and Reliance did not have an account with the bank. Nowhere in defendant's brief is there cited any legal authority for its contentions. Defendant argues only that the corporate resolution authorizing the opening and maintaining of the account was executed by Rustin, and that Reliance never requested the Bank to include its name on the account signature card as a depositor or to send monthly statements or cancelled checks to it. Defendant next contends that the terms of the agreement do not require it to give notice of the tax levy to Reliance. In support of this contention, defendant argues that nowhere in the agreement is there any language specifically requiring the Bank to give notice of a tax levy to Reliance or stating that the funds coming into the special account were the property of Reliance.

[1] We believe defendant's contentions are wide of the mark. Reliance was a depositor of the Bank. By opening an account and delivering to a bank money, funds, or credits constituting the deposit, one becomes a depositor and a contractual relationship between the bank and the depositor is created. *In re Michael,* 273 N.C. 504, 160 S.E. 2d 495 (1968); 10 Am. Jur. 2d *Banks* § 338 (1963). While it is certainly possible to open an account using the funds of a third party and not create a depositor relationship between the bank and the third party, that is not the situation in the present case. Here, not only did Reliance open the account and provide its initial funding of $12,000, but it also met with representatives of the Bank and entered into a detailed agreement specifically delineating the conditions under which the Bank could pay funds out of the account. The fact that the Bank agreed to use the title "Rustin Construction Company, Inc. Special Account" or that it sent monthly banking statements and cancelled checks to the Charlotte address of Rustin does not deprive Reliance of its status as a depositor. The fact that Rustin was a

depositor obviously does not preclude Reliance from also being a depositor of the same account. Finally, we note that the agreement itself provided that "Bank agrees to deposit the proceeds of all monies received from said Bonded Contract from Contractor [Rustin] *or from Surety* [Reliance], in said trust account." (Emphasis added.)

The general rule concerning a bank's duties to its depositors is as follows:

> Since a deposit is a matter of contract between a depositor and the bank, the depositor may stipulate at the time of deposit as to how or by whom the money may be drawn out . . . A high standard of contractual responsibility has been imposed on banks in paying money chargeable against their depositors' accounts. The bank must, in paying out a deposit, comply with its agreement with the depositor. In the absence either of prior or subsequent negligence or misleading conduct on the part of the depositor, it cannot charge him with any payments except as are made in conformity with his genuine orders; payments otherwise made cannot be charged against the depositor *regardless of the care exercised and the precautions taken by the bank.* (Emphasis added.)

10 Am. Jur. 2d *Banks* § 494, at 462-63 (1963).

While the Bank may not have had a duty as a matter of law to give notice to Reliance of the tax levy, had it given notice then that would constitute one element in determining any "prior or subsequent negligence" on the part of the depositor; however, it would not have absolved the Bank of liability for making a payment not in conformity with the terms of the "Trust Agreement." In addition, the language contained in paragraph (8) of the agreement does not relieve the Bank of liability for wrongful payment; it only provides that the Bank has "no obligation to assure that checks issued on said trust account are actually for payment of bona fide charges" pursuant to the bonded contract.

[2] Defendant next contends that the "Trust Agreement" it entered into did not create a valid trust under the laws of North Carolina. Assuming arguendo the correctness of this contention, we think it irrelevant. Once funds were deposited in the special account they could only be disbursed as approved by Reliance,

and they no longer were the property of Rustin, if indeed they ever were. The language of the agreement plainly stated that Reliance had the right "to have all payments earned or to be earned by Contractor [Rustin] under Bonded Contracts applied to the payments of labor and material and charges of Contractor [Rustin] incurred in connection with the performance of Bonded Contracts." Furthermore, although Rustin would not by itself withdraw any funds from the special account, the agreement provided that the Bank "upon written request from the Surety [Reliance], will pay over to the Surety [Reliance] any funds on deposit in said trust account and the proceeds of any monies received under said assignments after said request from the Surety [Reliance]."

Additionally, there is plenary evidence in the record tending to show that the Bank knew that Reliance provided the initial funding of the account, that subsequent funding was from Rustin's assignment of future proceeds from bonded contracts and from Reliance, and that the funds in the account were held for the sole purpose of discharging Reliance's obligation under its bond. A cursory examination of the "Trust Agreement" reveals that its purposes were to ensure that all of the funds in the special account would be used for Reliance's benefit and to protect Reliance from having funds improperly disbursed. The trial court correctly concluded that the funds in the account were not the property of Rustin, and therefore were not subject to the levy by the I.R.S. against the property of Rustin. This assignment of error has no merit.

[3]  Finally, defendant contends that the court erred in concluding that Reliance had no duty to mitigate its damages by filing a claim for a refund with the I.R.S. or assisting the Bank in doing so because Reliance could have done either with little or no expense while the Bank did not have the necessary information to file the claim.

The funds in the special account were not the property of Rustin and the Bank had no authority to pay the funds to the I.R.S. in settlement of the tax levy against Rustin. The general rule is that a depositor's funds are unaffected by any unauthorized payment and the depositor may sue either the person to whom the deposit has been paid without authority or the Bank.

10 Am. Jur. 2d *Banks* § 508 (1963). We do not believe that the depositor should be put to an election in this situation and thus be forced to run the risk of being precluded from maintaining an action against the Bank. Nor do we believe that the Bank should be permitted to take no action to recover the wrongful payment and then plead as a defense the failure of the depositor to take action against the wrongful payee when both parties have a similar opportunity to remedy the wrong. *See Shaw v. Greensboro*, 178 N.C. 426, 101 S.E. 27 (1919). Furthermore, on the facts of this case we are unable to say that Reliance would have been able to minimize the loss "with reasonable exertion or trifling expense." *Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 121, 123 S.E. 2d 590, 598 (1962); *Troitino v. Goodman*, 225 N.C. 406, 35 S.E. 2d 277 (1945).

For the reasons stated above the judgment appealed from is affirmed.

Affirmed.

Chief Judge MORRIS and Judge ERWIN concur.