CHAMPION INTERNATIONAL CORPORATION v. UNION NATIONAL BANK

No. 846SC393

(Filed 19 February 1985)

**Uniform Commercial Code § 36— payment of certificates of deposit purchased with embezzled funds**

A bank was not discharged after paying three certificates of deposit where the certificates stated that they were payable to ". . . registered holders upon surrender of this certificate properly endorsed" and the S.B.I. confiscated the certificates in connection with an investigation of fraud and embezzlement by the purchaser and notified the bank. The purchaser of the certificates was not in possession and therefore not a "holder," the bank violated its contract and G.S. 25-3-413 by paying out to him, and the bank was not discharged under G.S. 25-3-603(1). Furthermore, the embezzled company could redeem the certificates as a "registered holder" under a court order awarding it the proceeds payable under the certificates as the equitable owner. G.S. 25-1-201(20), G.S. 25-3-804.

APPEAL by defendant from *Brown, Judge*. Judgment rendered 9 January 1984 in Superior Court, HALIFAX County. Heard in the Court of Appeals 3 December 1984.

Between 24 May 1979 and 14 February 1980, an employee of plaintiff Champion International Corporation (Champion), bought three money market certificates of deposit from the defendant Union National Bank (the Bank). These certificates had values of $10,000, $30,942.41, and $20,000. The employee had purchased these certificates with money embezzled from Champion.

The employee created a fictitious company, Northstate Logging Company, in order to secrete assets from and defraud Champion. On 29 February 1980, the North Carolina State Bureau of Investigation (SBI) served on the Bank an Order for Examination

and Reproduction of Bank Records of Northstate Logging Company.

On 6 March 1980, the SBI seized a briefcase belonging to the employee, containing the three certificates of deposit. The plaintiff fired the employee on 15 March 1980. The SBI informed the Bank that it had confiscated the certificates of deposit and that the employee had been fired by Champion. An employee of the Bank acknowledged that he was aware as of 19 August 1980, that the SBI had confiscated the certificates.

On 19 August, the Bank cashed the $20,000 certificate at the request of the employee of Champion and credited the principal sum plus interest to Northstate Logging Company's checking account. On 15 September and 20 November, the Bank cashed the $30,942.41 and $10,000 certificates respectively, again at the employee's request. The Bank agreed to release the principal and interest represented by the certificates upon the employee providing bonds that the certificates had been lost or stolen.

Champion filed suit against its employee in Wake County Superior Court on 20 November 1980. On 28 December 1981, judgment was entered in favor of Champion.

Champion brought this action against the Bank and after discovery moved for partial summary judgment as to the three certificates of deposit. The Bank also asked for summary judgment. The trial court granted Champion's motion and denied the Bank's motion.

*Royster, Royster & Cross, by T. S. Royster, Jr., for defendant appellant.*

*Bailey, Dixon, Wooten, McDonald & Fountain, by David M. Britt, Wright T. Dixon, Jr., and Gary K. Joyner, for plaintiff appellee.*

ARNOLD, Judge.

The question presented by this appeal is whether the Bank improperly cashed three certificates of deposit to the registered holder when it had notice that the State Bureau of Investigation (SBI) had confiscated the actual certificates in connection with an investigation of fraud and embezzlement of Champion by an employee.

The Bank argues that Article 3 of the UCC applies to the certificates and suggests that its handling of the certificates was correct. Assuming Article 3 does apply, we find, however, that it does not sanction the Bank's cashing of the certificates.

The certificates all stated that they are payable to ". . . registered holders upon surrender of this certificate properly endorsed." Under G.S. 25-3-413, the maker of the instrument, in this case the Bank, "engages that he will pay the instrument according to its tenor at the time of his engagement. . . ." A "holder" is a person "*who is in possession* of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank." G.S. 25-1-201(20) (emphasis added).

Champion's employee was not in possession of the certificates at the time he sought payment for them. He was therefore not a "holder," and the Bank violated its contract and G.S. 25-3-413 by paying out to him.

The Bank claims that its liability under the certificates was discharged pursuant to G.S. 25-3-603(1), by payment to the employee, and by failure of Champion to supply an indemnity bond or to obtain a court order enjoining payment. Yet, G.S. 25-3-603(1) predicates discharge on "payment or satisfaction to the holder." As noted above, Dewey was not in possession and therefore was not a holder.

The Bank is still liable on the certificates, and Champion may redeem them given that it is a "registered holder." Prior to the summary judgment against the Bank, the SBI for Champion was in possession of the certificates. It was not a "holder," however, because the certificates had not been issued or endorsed to it, or to its order, or in blank. The trial court's order of 9 January 1984, however, awarded Champion the amounts payable under the certificates because Champion was the equitable owner. The trial court's order, we find, effectively discharges the Bank of its liability under the certificates once it pays the award to Champion.

When payment was demanded by the employee, who did not have the certificates, and the Bank had actual knowledge that the SBI had confiscated the certificates in connection with a fraud in-

vestigation, the Bank should have held the funds until ownership of the certificates had been determined by a court of law. The employee's only recourse at that stage would have been to proceed according to G.S. 25-3-804, even though it is doubtful whether he would have succeeded since he was not the true owner of the certificates.

If the Bank determined that under the circumstances it should pay the employee, then it did so at its own risk, and should have required an indemnity bond of some sort in the event of other claims. The Bank did require a "lost securities bond," and we take that as evidencing the Bank's recognition that it might be liable when the certificates were presented by another.

The Bank has no defense against the judgment on the grounds of the Uniform Commercial Code.

Affirmed.

Judges WELLS and EAGLES concur.