TIMOTHY S. HOLLOWAY, JR. v. WACHOVIA BANK & TRUST COMPANY, N.A. AND WACHOVIA BANK & TRUST COMPANY, N.A. v. MARCIA CRISP COLEMAN

No. 11PA92

(Filed 18 December 1992)

1. **Uniform Commercial Code § 28 (NCI3d)— certificate of deposit—not a negotiable instrument under UCC**

     A certificate of deposit issued by a bank was not a negotiable instrument under the UCC because it was payable "to the Registered Holder, or to the duly registered assignee hereof" and not payable to "order" or to "bearer," and because it was ". . . assignable only by registration on the books of the Bank," terms precluding transfer. N.C.G.S. § 25-3-104(1)(d); N.C.G.S. § 25-3-104(1)(b).

    **Am Jur 2d, Banks §§ 457, 458.**

2. **Gifts or Donations § 12 (NCI4th)— certificate of deposit— donative intent—delivery**

     The essential elements of a gift *inter vivos* were present in a certificate of deposit issued to "Timmy S. Holloway, Jr., by Rountree Crisp, Sr., Agent" where Timmy was a six-year-old minor and Crisp's grandson. Crisp clearly expressed his

intent to give the underlying funds to Timothy when he transformed the funds into a certificate of deposit in Timothy's name, with himself listed merely as agent for Timothy. This indicates donative intent because Crisp did not merely place the funds in a bank account with Timothy's name on the passbook, but took the further step of transferring the account into a certificate of deposit which stated on its face that Timothy was the payee, and because Crisp placed himself on the certificate as agent, not as co-owner or as grandfather. It does not matter whether Crisp established a legally binding agency relationship; by naming himself as Timothy's agent, Crisp indicated an intent to relinquish control and dominion over the funds. As to delivery, there may be a delivery notwithstanding the maker keeps the instrument in his possession where it is apparent that he intended to hold it for the benefit and as the agent of the payee; further, the evidentiary purpose of the formality of delivery is met when a certificate of deposit is made in a name other than the depositor's, as the courts can rely on the contract between the bank and the depositor, evidenced by the certificate, as proof of the gift. Relaxing the technical requirements as to gifts is justified by the certainty of transfer and ownership that the form of a certificate of deposit affords and where an adult donor may not choose, for practical reasons, to physically deliver a large sum of money to a young child.

**Am Jur 2d, Gifts §§ 20, 70, 71, 96, 97.**

3. **Banks and Other Financial Institutions § 48 (NCI4th)— certificate of deposit — contract — terms violated**

The trial court erred by granting summary judgment for Wachovia in an action for the value of a certificate of deposit plus interest where the certificate was to "Timmy S. Holloway, Jr., by Rountree Crisp, Sr. Agent"; Timmy was a six-year-old minor and Crisp's grandson; the certificate was found in Crisp's safe deposit box after his death; Wachovia paid the proceeds then due on the certificate to Marcia Coleman, Timothy's mother, and to Louise Crisp, Crisp's widow and Timothy's grandmother, upon an endorsement reading "Timothy S. Holloway, Jr., by Estate of George R. Crisp, Sr., Marcia Coleman, Adminx., Louise D. Crisp, Adminx."; on the same date and on a subsequent occasion Coleman rolled over the proceeds into a certificate of deposit in the name of "Timmy S. Holloway, Jr. by Marcia

HOLLOWAY v. WACHOVIA BANK AND TRUST CO.

[333 N.C. 94 (1992)]

Coleman"; Coleman thereafter presented the certificate for payment while Timothy was a minor; she does not remember what she did with the proceeds; no court had appointed her as Timothy's guardian with authority to receive the funds; and Timothy brought this action after attaining his majority. When Crisp deposited the $20,000 with Wachovia, a debtor-creditor relationship was established in which Wachovia became the owner of the money and the debtor of Crisp. The terms of the contract are contained in the certificate of deposit and, in order to pay the certificate according to its terms, Wachovia had to pay the certificate to Timothy or to someone authorized to accept payment on his behalf. Because Timothy was a minor, Wachovia's only legally permissible option was to pay the funds to a legally appointed guardian for Timothy.

**Am Jur 2d, Banks §§ 460-462.**

4. **Uniform Commercial Code § 28 (NCI3d) — certificate of deposit — wrongful payment — liability of bank**

Although a certificate of deposit was not negotiable, it would have been wrongfully paid under the UCC where the certificate was to "Timmy S. Holloway, Jr., by Rountree Crisp, Sr., Agent"; Timmy was a six-year-old minor and Crisp's grandson; the certificate was found in Crisp's safe deposit box after his death; Wachovia paid the proceeds then due on the certificate to Marcia Coleman, Timothy's mother, and to Louise Crisp, Crisp's widow and Timothy's grandmother, upon an endorsement reading "Timothy S. Holloway, Jr., by Estate of George R. Crisp, Sr., Marcia Coleman, Adminx., Louise D. Crisp, Adminx."; on the same date and on a subsequent occasion Coleman rolled over the proceeds into a certificate of deposit in the name of "Timmy S. Holloway, Jr. by Marcia Coleman"; Coleman thereafter presented the certificate for payment while Timothy was a minor; she does not remember what she did with the proceeds; no court had appointed her as Timothy's guardian with authority to receive the funds; and Timothy brought this action after attaining his majority. In order to pay this certificate according to its tenor, Wachovia would have had to pay the proceeds to Timothy or his guardian. While Coleman was executrix of Crisp's estate, Crisp's status as agent for Timothy ended with his death and Coleman could not act on Crisp's behalf as Timothy's agent in accepting payment of the certificate. Coleman effectively converted the

**HOLLOWAY v. WACHOVIA BANK AND TRUST CO.**

[333 N.C. 94 (1992)]

certificate of deposit when, without proper authorization, she presented it for payment and received the proceeds due on it. N.C.G.S. § 25-3-804.

**Am Jur 2d, Banks §§ 460-462.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 104 N.C. App. 631, 410 S.E.2d 915 (1991), affirming a judgment entered by Fullwood, J., on 14 December 1990 in Superior Court, New Hanover County. Heard in the Supreme Court 10 September 1992.

*Maupin Taylor Ellis & Adams, P.A., by Karon B. Thornton and James E. Gates, for plaintiff appellant.*

*Stevens, McGhee, Morgan, Lennon & O'Quinn, by Richard M. Morgan, for defendant appellee.*

*No brief filed by third-party defendant Marcia Crisp Coleman.*

WHICHARD, Justice.

On 13 October 1975, Wachovia Bank ("Wachovia") issued a $20,000.00 certificate of deposit to "Timmy S. Holloway, Jr., by Rountree Crisp, Sr., Agent." At the time Timmy ("Timothy") was a six-year-old minor. Crisp died on 5 April 1978. At Crisp's death, the certificate of deposit in Timothy's name with Crisp as agent was found in Crisp's safe deposit box, along with two other certificates of deposit. One was in the name of "Rountree Crisp, agent for Marcia Coleman," and the other was in the name of "Rountree Crisp, Agent for Rountree Crisp, Jr." Wachovia paid the latter two certificates of deposit to Marcia Coleman and Rountree Crisp, Jr., respectively.

Marcia Coleman, Crisp's daughter and Timothy's mother, testified on deposition that her father may have placed certificates of deposit in the names of various people for tax purposes. Coleman also testified that her father was very private about his financial affairs, never told her about the certificate of deposit in Timothy's name, did tell her about the certificate in her name, and paid her the interest on the latter certificate.

As to the certificate of deposit in Timothy's name, on 11 April 1980 Wachovia paid to Marcia Coleman and Louise Crisp, Crisp's widow and Timothy's grandmother, the sum of $26,294.92, pur-

portedly the proceeds then due on the certificate of deposit, upon an endorsement reading "Timothy S. Holloway, Jr., by Estate of George R. Crisp, Sr., Marcia Coleman, Adminx., Louise D. Crisp, Adminx." On the same date and on a second occasion, Coleman rolled over the proceeds of the certificate of deposit into the following certificates of deposit issued by Wachovia: 1) a certificate for $26,294.92 in the name of "Timmy S. Holloway, Jr., by Marcia Coleman," dated 11 April 1980 and 2) a certificate for $26,294.92 in the name of "Timmy S. Holloway, Jr., by Marcia Coleman," dated 17 October 1980.

On 23 October 1981, Coleman presented the 17 October 1980 certificate to Wachovia for payment. Wachovia paid the certificate with a check in the amount of $26,294.92 payable to "Timmy S. Holloway, Jr., by Marcia Coleman." Coleman stated in response to interrogatories that she does not remember what she did with the $26,294.92 proceeds of the 23 October 1981 check. At this time, Timothy was still a minor. No court had appointed Coleman as Timothy's guardian with authority to receive the funds for him. In June 1986, Coleman was appointed Timothy's guardian for purposes of holding real property inherited by Timothy from his grandmother, Louise Crisp.

Timothy attained his majority on 5 September 1987. Shortly before his eighteenth birthday, Timothy's relationship with his mother had deteriorated to the point that he had moved away from her house and to an aunt's house. In the summer of 1988, Timothy was in need of money and his aunt told him about the certificate of deposit left by his grandfather. Timothy then remembered that his grandmother had told him when he was a child that his grandfather had left him money.

On 12 May 1989, Timothy brought this action against Wachovia seeking to recover the original value of the certificate ($20,000.00) plus interest. Both parties moved for summary judgment. The trial court denied Timothy's motion and granted Wachovia's motion. The Court of Appeals affirmed. *Holloway v. Wachovia Bank and Trust Co.*, 104 N.C. App. 631, 410 S.E.2d 915 (1991). On 4 March 1992, we allowed plaintiff's petition for discretionary review. On appeal, the parties agree that no triable issue of fact exists; neither party has disputed that the case is appropriate for summary judgment.

HOLLOWAY v. WACHOVIA BANK AND TRUST CO.

[333 N.C. 94 (1992)]

Both lower courts viewed the issue as whether the certificate of deposit which Crisp purchased constituted a completed *inter vivos* gift to Timothy; both held that it did not. We hold that the certificate of deposit does represent a completed *inter vivos* gift from Crisp to Timothy. We further hold that the certificate evidences a contract between Wachovia and Crisp, the terms of which Wachovia violated when it paid the proceeds of the certificate to Coleman. The trial court thus erred in denying Timothy's motion for summary judgment and in granting Wachovia's, and the Court of Appeals erred in affirming the trial court.

[1] Before turning to our gift and contract analysis, we first note that the certificate of deposit in question does not qualify as a negotiable instrument under the Uniform Commercial Code ("UCC"). While the UCC explicitly recognizes that certificates of deposit can be negotiable instruments, N.C.G.S. § 25-3-104(2)(c) (1986), the certificate at issue fails to meet two elements of negotiability under the UCC. First, the certificate is not payable to "order" or to "bearer." N.C.G.S. § 25-3-104(1)(d) (1986). Rather, the certificate is "payable to the Registered Holder, or to the duly registered assignee hereof." While the UCC states that "assigns" language may satisfy the requirement of being payable to order, N.C.G.S. § 25-3-110(1) (1986), this Court has held that language similar to that contained in the certificate lacks the essential words of negotiability. *Trust Co. v. Creasy*, 301 N.C. 44, 51-52, 269 S.E.2d 117, 122 (1980) (a paper which states that "the undersigned hereby absolutely and unconditionally guarantees to you and your successors and assigns the due and punctual payment of any and all notes" is not negotiable under Article Three); *see also Savings & Loan Assoc. v. Trust Co.*, 282 N.C. 44, 54, 191 S.E.2d 683, 690 (1972); *Gray v. American Express Co.*, 34 N.C. App. 714, 716, 239 S.E.2d 621, 623 (1977); *but see Security Pacific Nat'l Bank v. Chess*, 58 Cal. App. 3d 555, 561 and 561 n.7, 129 Cal. Rptr. 852, 856 and 856 n.7 (1976) (indorsement to "Equipment Leasing of California, a corporation, its successors or assigns" makes notes "order" paper under 3-110, not "bearer" paper).

If the certificate of deposit merely lacked "order" or "bearer" language and met all the other requirements of negotiability under the UCC, the UCC would still govern, except there could be no holder in due course of the certificate. N.C.G.S. § 25-3-805 (1986); *Creasy*, 301 N.C. at 52 n.2, 269 S.E.2d at 122 n.2. There is a second aspect of the certificate, however, which places it in a class of

certificates of deposit which are not negotiable by either means under the UCC because they contain terms precluding transfer. *See Estate of Isaacson v. Isaacson*, 508 So. 2d 1131, 1134 (Miss. 1987); Steven L. Harris, *Non-Negotiable Certificates of Deposit: An Article 9 Problem*, 29 U.C.L.A. L. Rev. 330, 333 (1981). Those terms are that the "Certificate is assignable only by registration on the books of the Bank." Courts that have addressed similar restricting language in certificates of deposit and other instruments have held that these instruments are nonnegotiable because they do not contain the unconditional promise to pay required by section 3-104(1)(b) of the UCC. *Isaacson*, 508 So. 2d at 1132-34 (involves three sets of certificates of deposit containing restrictions on transfer, one of which states that no assignment is binding on bank until written notice of assignment by depositor(s) or last registered assignee has been acknowledged in writing by bank); *Citizens Nat. Bank of Orlando v. Bornstein*, 374 So. 2d 6, 12-13 (Fla. 1979) (certificate of deposit does not fall under 3-805 because in the event of assignment, the promise to pay is conditioned upon consent of the bank and reflection of the assignment on the bank's books); *First State Bank at Gallup v. Clark*, 91 N.M. 117, 119, 570 P.2d 1144, 1146 (1977) (promise to pay was not unconditional and note was expressly drafted to render it nonnegotiable by addition of a restriction on the back of the note stating that the note could not be transferred, assigned, or pledged without consent of the maker).

[2] Because the certificate of deposit at issue does not fall under the UCC, we must turn to the common law. We first turn to gift law, as the lower courts did. The essential elements of a gift *inter vivos* are 1) donative intent and 2) delivery, actual or constructive. *Fesmire v. Bank*, 267 N.C. 589, 591-92, 148 S.E.2d 589, 592 (1966). The lower courts agreed with Wachovia that both elements are absent in this case. The Court of Appeals reasoned that donative intent is negated by the presence of the language "Rountree Crisp, Sr., Agent," as that language indicates an intent to retain some control over the certificate of deposit. The Court of Appeals also held that no delivery, actual or constructive, occurred, where neither Timothy nor his mother knew of the existence of the certificate until it was found in Crisp's safe deposit box after his death.

We hold that Crisp clearly expressed his intent to give the underlying funds to Timothy when he transformed the funds into a certificate of deposit in Timothy's name, with himself listed merely as agent for Timothy. *See, e.g., Malek v. Patten*, 208 Mont.

237, 241-43, 678 P.2d 201, 204 (1984); *Kelly v. Huplits*, 103 Pa. Super. 430, 432, 157 A. 704 (Super. Pa. 1931). There are two key aspects of this transaction that indicate donative intent. First, Crisp did not merely place the funds in a bank account with Timothy's name on the passbook. All but one of the cases, most of them quite old, on which Wachovia relies involve mere deposits in bank accounts, not deposits that are further formalized and clarified through the purchase of certificates in the donee's name. *See, e.g., Peters' Adm'r v. Peters*, 224 Ky. 493, 501, 6 S.W.2d 499, 502 (Ky. Ct. App. 1928) (mere act by father of depositing money in a checking account in his adult son's name does not indicate donative intent, as the act did not cause the father to lose control or dominion over it; father had right to change his mind and recover the money up to any point where the son learned of the gift and accepted it); *Getchell v. Biddeford Sav. Bank*, 94 Me. 452, 47 A. 895 (1900) (no gift where husband deposited his own money in a savings account in his wife's name with the passbook in her name). For the other cases relied on by Wachovia, see L. S. Tellier, *Gift or trust by deposit in bank in another's name or in depositor's own name in trust for another, as affected by lack of knowledge on the part of such other person*, 157 A.L.R. 925, at 925-30 (1945, Supp. 168 A.L.R. 1324 (1947) ) and 10 Am. Jur. 2d *Banks* § 395 (1963). Donative intent may be less clear when the putative donor merely deposits money in a bank account in another's name. In the case at bar, however, Crisp took the further step of transferring the account into a certificate of deposit, which stated on its face that Timothy was the payee of the deposited funds. "The transfer of the account into the certificate was the vital element in this transaction. It showed the executed purpose to give. The certificate spoke for itself; it asserted on its face that the [donee] was the owner of the deposited money." *Kelly*, 103 Pa. Super. at 432, 157 A. at 704.

Second, Crisp placed himself on the certificate as agent of Timothy, not as co-owner or as "grandfather." *Cf. Guardianship of Coolidge*, 12 Wis. 2d 58, 62, 106 N.W.2d 282, 285 (1960) (opening of savings accounts by a mother in her sons' names "by mother" indicated an intent to control the funds). Wachovia argues that there is no agency relationship because there was no meeting of the minds between Timothy and Crisp that Crisp would be Timothy's agent and, therefore, there was no contract which Timothy could ratify upon attaining his majority. It does not matter whether Crisp succeeded in establishing a legally binding agency relation-

HOLLOWAY v. WACHOVIA BANK AND TRUST CO.

[333 N.C. 94 (1992)]

ship. Cf. Jackson v. Gallagher, 128 Ga. 321, 332, 57 S.E. 750, 755 (Ga. 1907) (court deemed it unnecessary to discuss the doctrine of appointment and ratification of agents by children in case where uncle deposited money for his niece as the child's agent; uncle "would be in no position to claim that he could afterwards use the money for himself because the child was of tender years, could not contract, and had not formally appointed him an agent to receive the money for her"). The agency language on the certificate is only of interest regarding the question of donative intent. On this point, Wachovia argues, and the Court of Appeals agreed, that by naming himself as agent, Crisp indicated that he did not intend to relinquish all control and dominion over the funds. We hold that the language indicates only that Crisp intended to exercise control over the funds as Timothy's agent. When one acts as another's agent in the payment or delivery of agency funds, the agent may not use the funds as his own and may not deny the title of the principal. Guarantee v. Ginsberg, 101 N.H. 218, 222-23, 138 A.2d 456, 458-59 (1958); Succession of Onorato, 219 La. 1, 29-30, 51 So. 2d 804, 813 (1951); cf. Nye v. Lipton, 50 N.C. App. 224, 228-29, 273 S.E.2d 313, 315-16 (1981) (where lender loaned principal money for which lender took note from principal, principal instructed attorney agent to pay loan from first moneys of principal which came to attorney agent, and attorney agent received moneys for principal and did not pay lender with them, attorney agent's estate was liable for amount of money loaned). Crisp, therefore, by naming himself as Timothy's agent, did indicate an intent to relinquish control and dominion over the funds as his funds.

As to delivery, "[t]here may be a delivery notwithstanding the maker keeps the [instrument] in his ·possession, where it is apparent that he intended to hold it for the benefit and as the agent of the payee." Cartwright v. Coppersmith, 222 N.C. 573, 579, 24 S.E.2d 246, 250 (1943) (quoting 10 C.J.S., p. 513); cf. Walso v. Latterner, 140 Minn. 455, 460, 168 N.W. 353, 355 (1918) (court finds completed gift, despite fact that depositor retained possession of passbook of a savings account in depositor's name as trustee for his brother, because depositor would naturally retain possession as trustee); Collins v. Collins' Administrator, 242 Ky. 5, 12, 45 S.W. 2d 811, 814 (1932) (when deposit is in the name of donee, possession of passbook by depositor "is not so vital as an element in the transaction and may be explained"); but see Coolidge, 12 Wis. at 62, 106 N.W.2d at 285 (no completed gift of deposit of

money in an account in another's name unless depositor delivers passbook). Further, the evidentiary purpose of the formality of delivery is met when a certificate of deposit is made in a name other than the depositor's, as the courts can rely on the contract between the bank and the depositor, evidenced by the certificate, as proof of the gift. *See, e.g., Malek,* 208 Mont. at 243-45, 678 P.2d at 205; 10 Am. Jur. 2d *Banks* § 378, at 343 (1963); 157 A.L.R. at 926. Finally, relaxing of the technical requirements as to gifts is justified by the certainty of transfer and ownership that the form of a certificate of deposit affords and where, as here, an adult donor may not choose, for practical reasons, to physically deliver a large sum of money to a young child. *See, e.g., Leggett v. Rose,* 776 F. Supp. 229, 235 (E.D.N.C. 1991); *Roth v. Roth,* 571 S.W.2d 659, 667 (Mo. Ct. App. 1978) (applying a rebuttable presumption of acceptance by a donee of a beneficial gift); *In re Estate of Paulson,* 219 N.W.2d 132, 136 (N.D. 1974) (applying a presumption of acceptance by a minor donee of a beneficial gift); *Bunt v. Fairbanks,* 81 S.D. 255, 259, 134 N.W.2d 1, 3 (1965) (same); 7 Am. Jur. Proof of Facts 2d, *Gift of Fund on Deposit* § 16 (1975) (same); *cf.* Patricia Cramer Jenkins, Survey of Developments in North Carolina Law, 1987, *North Carolina Enacts The Uniform Transfers to Minors Act,* 66 N.C. L. Rev. 1349, 1349-50 (1988) (statutes, like the Uniform Transfers to Minors Act, which authorize custodial accounts for minors were enacted, in part, in recognition of the hesitation of donors to place large sums of money in the hands of financially irresponsible donees).

[3] Not only does the certificate represent a completed gift, it also evidences a contract between Crisp and Wachovia, the terms of which Wachovia violated when it paid the proceeds to Coleman. When Crisp deposited the $20,000.00 with Wachovia, a debtor-creditor relationship was established in which Wachovia became the owner of the money and the debtor of Crisp. *In re Michal,* 273 N.C. 504, 506, 160 S.E.2d 495, 497 (1968); *Schwabenton v. Bank,* 251 N.C. 655, 656, 111 S.E.2d 856, 857 (1960); *Lipe v. Bank,* 236 N.C. 328, 330-31, 72 S.E.2d 759, 761 (1952). The terms of the debtor-creditor relationship are determined by the contract between the bank and the depositor. *In re Michal,* 273 N.C. at 506, 160 S.E.2d at 497. "Since a deposit is a matter of contract between a depositor and the bank, the depositor may stipulate at the time of deposit as to how or by whom the money may be drawn out . . . . The bank must, in paying out a deposit, comply with its agreement

**HOLLOWAY v. WACHOVIA BANK AND TRUST CO.**

[333 N.C. 94 (1992)]

with the depositor." *Insurance Co. v. Bank*, 39 N.C. App. 420, 427, 250 S.E.2d 699, 704 (1979) (quoting 10 Am. Jur. 2d *Banks* § 494, at 462-63 (1963)).

The terms of the contract between Crisp and Wachovia are contained in the certificate of deposit. "[A] certificate of deposit is a bank's promissory note, payable only according to its terms." *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 337 (Mo. Ct. App. 1991). Those terms are that the sum of $20,000.00 "shall be payable to the Registered Holder, or to the duly registered assignee hereof." "Timmy S. Holloway, Jr. by Rountree Crisp, Sr., Agent" is listed in the blank for "registered holder." In order to pay the certificate according to its terms, therefore, at the time Coleman presented it, Wachovia had to pay the certificate to Timothy or to someone authorized to accept payment on his behalf. Because Timothy was a minor at the time Wachovia paid the certificate, Wachovia's only legally permissible option was to pay the funds to a legally appointed guardian for Timothy. *Parker v. Moore*, 263 N.C. 89, 90-91, 138 S.E.2d 821, 822 (1964). Rather than following the only legally authorized procedure—*i.e.*, ascertaining whether Coleman was in fact Timothy's legally appointed guardian, "deriving [her] authority from the action of a competent court, evidenced by a proper record," 10 Am. Jur. 2d *Banks* § 462, at 433—Wachovia improperly paid the certificate of deposit to Coleman, who was not Timothy's legally appointed guardian at the time. *Cf. Champion Int. Corp. v. Union Nat'l Bank*, 73 N.C. App. 147, 149-50, 325 S.E.2d 656, 658, *disc. rev. denied*, 313 N.C. 597, 332 S.E.2d 177 (1985) (when bank had knowledge that certificates had been confiscated by SBI in connection with fraud investigation, bank should have held the funds until a court of law determined the ownership of the certificates). It is thus liable to Timothy for having paid the instrument other than according to its terms.

[4] The result would be the same under the UCC had the certificate been negotiable. A "certificate of deposit" is defined by the Code as "an acknowledgment by a bank of receipt of money with an engagement to repay it." N.C.G.S. § 25-3-104(2)(c) (1986). In engaging to repay a certificate of deposit, a bank, as maker of the instrument, engages to pay it "according to its tenor." N.C.G.S. § 25-3-413(1) (1986); *Champion*, 73 N.C. App. at 149, 325 S.E.2d at 657-58. The bank's liability on the certificate is "unconditional and absolute." James J. White & Robert S. Summers, *Uniform Commercial Code* § 13-6, p. 556 (3d ed. 1988); *accord Whiteside v. Douglas*

*County Bank*, 145 Ga. App. 775, 776, 245 S.E.2d 2, 3 (1978). As explained above, in order to pay this certificate according to its tenor, Wachovia would have had to pay the proceeds to Timothy or his guardian.

If the UCC applied to this case, Wachovia would not be able to claim satisfaction or payment of the certificate under N.C.G.S. § 25-3-603(1) (1986) because liability of a party is only discharged under this provision by payment or satisfaction to a "holder." *Champion*, 73 N.C. App. at 149, 325 S.E.2d at 657-58. Coleman was not a "holder" because the certificate was not "drawn, issued, or indorsed to [her] or to [her] order or to bearer or in blank." N.C.G.S. § 25-1-201(20) (1986); *Champion*, 73 N.C. App. at 149, 325 S.E.2d at 657-58. While Coleman was executrix of Crisp's estate, Crisp's status as agent for Timothy on the certificate ended with his death. *Holloway*, 104 N.C. App. at 634, 410 S.E.2d at 917; 3 Am. Jur. 2d *Agency* § 57, at 559 (1986). Coleman, therefore, could not act on Crisp's behalf as Timothy's agent in accepting payment of the certificate.

Had Timothy been able to sue under the UCC, he would not have sued as "holder" of the certificate because he did not have possession of the original certificate of deposit. *See Haupt v. Coldwell*, 500 S.W.2d 563, 565 (Tex. Ct. App. 1973). Rather, he would have had to bring his action pursuant to N.C.G.S. § 25-3-804 (1986), which permits an owner of an instrument to "maintain an action in his own name and recover from any party liable" upon an instrument when the instrument has been lost, destroyed, or stolen. Coleman effectively converted the certificate of deposit when, without proper authorization, she presented it for payment and received the proceeds due on it.

For the reasons stated, we hold that the Court of Appeals erred in affirming the trial court's denial of Timothy's motion for summary judgment and granting of Wachovia's motion for summary judgment. The decision of the Court of Appeals is therefore reversed, and the cause is remanded to that court for further remand to the Superior Court, New Hanover County, for entry of summary judgment for plaintiff.

REVERSED AND REMANDED.

Justice WEBB did not participate in the consideration or decision of this case.